ARTHUR C. JOFFE et al., as Executors of ELSIE E. SPECTOR, Deceased, Appellants, v. SOLOMON SPECTOR, Respondent.

Fourth Department, May 18, 1967.

*Coulter, Fraser, Carr, Ames & Bolton* for appellants.

*R. J. & P. R. Shanahan* for respondent.

GOLDMAN, J. A separation action was brought by the plaintiffs' decedent in 1946 in which the defendant counter-claimed for an annulment. The record of the trial impels one to conclude that the main issue throughout the litigation was the property settlement rather than the severance of the marriage. Before the decision was made, the parties entered into an agreement settling the amount to be paid to the wife. Thereafter an annulment was granted the defendant husband. In March, 1963 the wife became seriously ill with cancer, from which she ultimately died. In December, 1964 the wife moved for a modification of the annulment decree of 1949 and requested $500 monthly for her support and maintenance, principally based upon financial need growing out of her illness. By order of June 28, 1965, Special Term allowed her $300 per month and counsel fees (49 Misc 2d 591). Defendant husband appealed from that order and this court affirmed (24 A D 2d 1082, mot. for lv. to app. den. 17 N Y 2d 419).

On June 27, 1965 the wife entered Roosevelt Hospital in New York City for further treatment of her malignancy, including cobalt therapy. By order to show cause, returnable July 26, 1965, the wife sought a modification of the June 28, 1965 order and requested $2,500 per month to pay for the cost of her hospitalization. Hospital bills and affidavits in support of her application demonstrate, without contradiction, that her monthly expenses were $2,000 to $2,500. Special Term denied her application, citing as its reason that its order of June 28, 1965 " covered medical expenses incurred or to be incurred ". The refusal to increase the allowance under the circumstances in this record was an improvident exercise of Special Term's discretion. The wife appealed but before the matter was argued in this court she died on January 23, 1966. A motion made on April 25, 1966 to substitute executors as appellants was granted

without defendant's opposition. Seven months later defendant respondent moved to dismiss the appeal upon the ground that it had become academic by reason of the wife's death. This court denied that motion with leave to renew it upon the argument of the appeal. The motion was renewed upon argument and is hereby denied.

The issue is squarely presented as to whether this appeal abated by reason of the wife's death. The defendant has paid the wife's executors the $300 per month allowance up to the date of her death and appellant executors are seeking an additional $2,200 per month to the date of death. Section 236 of the Domestic Relations Law (previously Civ. Prac. Act, § 1170) governs alimony orders. It is founded upon the theory of continuing court jurisdiction over a matrimonial action after final judgment (*Fox* v. *Fox*, 263 N. Y. 68, 70; *Mazer* v. *Mazer*, 276 App. Div. 733, 737). Professor David D. Siegel in his Practice Commentary to section 236 (McKinney's Cons. Laws of N. Y., Book 14, Domestic Relations Law, p. 134 *et seq.*) emphasizes the discretionary character of matrimonial actions with the statement: "According to the Matrimonial and Family Laws Committee which drafted it, section 236 ' unifies and broadens the discretion of the court in all classes of matrimonial actions ' ". Professor Siegel continues (pp. 135, 136):

" Section 236 wipes the slate clean of this disheveled mass." (Referring to all the matter in the Civil Practice Act.)

" The most striking aspect of section 236 is the unfettered discretion conferred   *   *   *   on the court. No contingencies or conditions are set forth; the standard here is general and apparently all encompassing. It is phrased thus: ' support.... as, in the court's discretion, justice requires, having regard *to the circumstances of the case and of the respective parties.*' (Emphasis added.) "

Since the enactment of chapter 240 of the Laws of 1925 the jurisdiction of the courts over the parties and over incidental subject matter (support) became a continuing one. This concept in matrimonial actions, sometimes referred to as the theory of prolongation, has been strengthened with the passage of time and is clearly broader than ever under section 236 of the Domestic Relations Law. With increasing liberality the law has recognized the right of a spouse to make continuous applications, based upon changed circumstances, to modify support and custody provisions (*Fox* v. *Fox, supra*). The effect of the law is to write a reservation of jurisdiction into every matrimonial judgment. While the judgment terminates the rela-

tion of husband and wife (status), it does not put an end to the legal and economic incidents of the marriage. The right to consider these incidental matters was recognized in a limited way in *Estin* v. *Estin* (296 N. Y. 308, affd. 334 U. S. 541, 544). The Supreme Court there affirmed the Court of Appeals determination that a support order survives the divorce decree. We accept this today as fundamental. *Kreiger* v. *Kreiger* (297 N. Y. 530, affd. 334 U. S. 555) followed the *Estin* precedent. However, our problem goes far beyond these decisions and is certainly more complex.

There is a great paucity of decisions on the question before us. In *Rattray* v. *Raynor* (10 N Y 2d 494, 498) the court made this pertinent statement: "Although the wife's death may have rendered a new trial impossible, it did not operate to abate either the actions which had theretofore culminated in the judgment of annulment or the appellate proceedings for the review of such judgment. (See *Blake* v. *Griswold,* 104 N. Y. 613; *Carr* v. *Rischer,* 119 N. Y. 117; *Van Ness* v. *Ransom,* 215 N. Y. 557.) Once an action for annulment is begun and a judgment entered at the trial level, the appellate process may be pursued to termination despite the intervening death of a party, upon the substitution of the latter's legal representative. The wife's death did not, therefore, defeat any right of appeal that the plaintiffs would otherwise have had to seek reinstatement of the judgment reversed by the Appellate Division. (See *Carr* v. *Rischer,* 119 N. Y. 117, *supra*; cf. Civ. Prac. Act, § 89.) ". In *Rattray* the relatives of an incompetent sued for annulment upon the ground of incompetency and prevailed at trial. The husband then died. Argument of the appeal was had, and the wife died before the Appellate Division decision, which reversed and ordered a new trial. Plaintiffs, who were relatives of the husband, stipulated for judgment absolute and appealed to the Court of Appeals. They then requested permission to withdraw the stipulations, which was granted, and the appeals based upon the stipulations were dismissed.

The next pronouncement of the Court of Appeals on this subject is found in *Huss* v. *Huss* (18 N Y 2d 812). In that case cross appeals resulted in a modification on the law by the Appellate Division of a prior decision of the Trial Term which dismissed the complaint in an action for a divorce and also dismissed the counterclaim for separation, but awarded custody of the children to the defendant and made provisions for maintenance and support. (See 15 A D 2d 941, app. dsmd. 13 N Y 2d 1179.) Plaintiff husband died while the cross appeals to

the Court of Appeals from the resettled judgment were pending. Defendant moved to dismiss the appeals upon the ground that the husband's action had abated by reason of death. In its memorandum in the *Huss* case the Court of Appeals wrote: '' Appeal taken by plaintiff dismissed, without costs, upon the ground that on his death the appeal abated and became academic. Application by defendant for permission to withdraw her cross appeal granted.''

In *Rattray* v. *Raynor* (*supra*), the plaintiff had succeeded in the lower court and had the asset of a judgment to protect on appeal. In *Huss* the husband had lost and it would appear that, therefore, he had no asset of a judgment to protect and the appeal was dismissed. On this theory, deceased wife, having lost at Special Term, had no order to protect and it is urged that the appeal, therefore, became academic. However, we have decided that denial of the wife's application was erroneous. Under these circumstances should not the deceased wife have a vested right to change, by appeal, an erroneous order? We are of the opinion that we have jurisdiction over this appeal, which deals not with status but with the incidental matter of support, to correct Special Term's error and give effect to the correction from the return date of the motion to the date of death (*Polizotti* v. *Polizotti*, 305 N. Y. 176, 179; *Harris* v. *Harris*, 259 N. Y. 334). In *McMains* v. *McMains* (15 N Y 2d 283, 288, 289) the court said: '' It will be for the Appellate Division on remand to set such a figure ' as justice may require ' '' and that we have '' indeed a broad grant of discretionary power, and it was so intended by the Legislature (see 1962 Report of Joint Legislative Committee on Matrimonial and Family Laws, N. Y. Legis. Doc., 1962, No. 34, p. 309, which says that proposed section 236 ' unifies and broadens the discretion of the court in all classes of matrimonial actions ').''

Respondent husband at no time raises any issue about his financial condition and ability to pay the increase requested by the wife. Nor is there any denial of the wife's need for a substantial increase from the $300 per month previously allowed her. Under these circumstances the order of Special Term should be reversed and the matter remanded to Special Term to determine, in the light of the facts, the amount of increased allowance which should be awarded for the wife's care and support up to the time of her death, and to determine the amount of counsel fees which should be allowed. Defendant husband should be given a credit of $300 per month on the increased amount for the payments made by him during the period up to the date of death.

Bastow, J. P., Henry, Del Vecchio and Marsh JJ., concur.

Order unanimously reversed, with costs, and matter remitted to Onondaga Special Term for further proceedings in accordance with the opinion.