[716 NYS2d 686]

ELIZABETH SASS, Appellant, v ANDREW SASS, Respondent.

Second Department, November 20, 2000

### APPEARANCES OF COUNSEL

*Jerry Winter, P. C.,* Garden City (*Marissa A. Winter* of counsel), for appellant.

*Long, Tuminello, Besso, Seligman, Quinlan & Werner,* Bay Shore (*Kevin J. Werner* and *Jeffrey S. Horn* of counsel), for respondent.

### OPINION OF THE COURT

O'BRIEN, J. P.

The parties to this matrimonial action have been divorced for over 10 years, and the former husband's obligation to pay maintenance under the terms of the judgment ended in 1994. The former wife, who is undeniably gravely ill and has become a public charge, now seeks a modification of the divorce judgment to reinstate maintenance payments pursuant to Domestic Relations Law § 236 (B) (9) (b). We conclude that the statute permits the modification of a judgment to reinstate maintenance payments after the original durational period of support has expired, and we remit the matter for a hearing on the application.

The plaintiff, Elizabeth Sass, and the defendant, Andrew Sass, had been married for 29 years when they were divorced by a judgment dated December 12, 1989. At that time, the plaintiff was 49 years old and the defendant was 52 years old. The judgment granted the plaintiff a divorce on the ground of abandonment and awarded her, *inter alia,* maintenance in the amount of $300 per week until September 27, 1994. The parties' main asset was the marital home, with a net value of $101,000, which was to be sold and the proceeds split equally. Certain sums owed by the defendant to the plaintiff were to be deducted from his share of the proceeds of the sale.

There is no dispute that the defendant fulfilled his maintenance obligation under the judgment and that support payments ceased in September 1994. In February 1999, the plaintiff moved pursuant to Domestic Relations Law § 236 (B) (9) (b) for an order awarding her maintenance in the sum of $300 per week, or alternatively, directing a hearing on her ap-

plication. The plaintiff presented evidence that she had been diagnosed with cirrhosis of the liver, of unknown etiology, in the spring of 1998, and that she was currently on a waiting list for a liver transplant. Although she had been pursuing a course of study at Suffolk County Community College with the intention of becoming a teacher, her illness caused symptoms of lethargy, poor concentration, and depression which prevented her from continuing her studies. In June 1998, she began receiving public assistance and was living on the charity of friends, as she was unable to obtain financial assistance from her elderly parents. She claimed that the defendant's financial circumstances had improved, in that his earnings as a teacher had increased from about $25,000 per year at the time of the divorce to $70,000 per year. She further alleged that she had not received all of the funds that had been awarded to her as part of the judgment of divorce because the defendant filed for bankruptcy after the divorce.

The plaintiff submitted a physician's affidavit which corroborated her contention that her symptoms had existed for about five years, although the disease was not diagnosed until 1998. The plaintiff's motion papers also included an excerpt from the transcript of the trial of the parties' divorce action in which the Judicial Hearing Officer, after considering the medical evidence presented by the plaintiff, concluded that she would be able to become self-supporting in five years. Based on the above evidence, the plaintiff's attorney argued that the plaintiff had established a substantial change in circumstance following the divorce and that she could not be self-supporting.

The defendant did not dispute any of the plaintiff's factual allegations but relied entirely on the arguments of his attorney regarding the untimeliness of the application. The attorney pointed out that the plaintiff had not filed a notice of appeal from the judgment of divorce and that the time to take such an appeal had long since expired. He contended that, although the plaintiff could have sought a modification of the maintenance provision of the judgment while the support obligation was still in effect, she could not now seek modification of a provision which had been fully complied with five years ago. He further stated that the husband had remarried and had undertaken new financial obligations.

In its decision, the Supreme Court agreed with the defendant that modification of a maintenance award pursuant to Domestic Relations Law § 236 (B) (9) (b) was only available during the period that the obligation of support remained in ef-

fect. The Supreme Court noted that Domestic Relations Law § 236 (B) (9) (b) did not expressly address the factual situation at bar, and it concluded that no statutory or decisional authority conferred the right to apply for support from a former spouse after the support obligation had expired. The Supreme Court further concluded that Domestic Relations Law § 236 (B) (6) (a), which governs maintenance awards, implicitly favors the termination of maintenance after a set durational period. The Supreme Court stated: "The plaintiff suggests that DRL § 236 (B) (9) permits the amendment of the judgment at any time if the circumstances so warrant. However, the court is unable to find any authority for such an expansive interpretation of the statute to permit an open ended support obligation in contravention of the explicit terms of the judgment—the provisions of which have been fully executed. Indeed, all the modification cases cited by the plaintiff (*Bischoff v Bischoff*, 159 AD2d 404, 553 NYS2d 102 [First Dept., 1990]; *Klotz v. Klotz,* 150 AD2d 308, 541 NYS2d 806 [First Dept., 1989]; *McMains v McMains,* 15 NY2d 283, 258 NYS2d 93) deal with instances in which spousal support obligation in the judgment or order by its very terms had not yet expired. In the present case, there is simply nothing to modify. In contrast to the petitioner's novel and liberal interpretation of the aforecited statute is the strong and countervailing public policy consideration, to wit, the finality and stability of judgments." In the order dated September 28, 1999, the Supreme Court denied the plaintiff's motion.

The following provision in Domestic Relations Law § 236 (B) (9) (b) is applicable to the case at bar, since the judgment did not incorporate a stipulation of settlement or separation agreement between the parties: "Upon application by either party, the court may annul or modify any prior order or judgment as to maintenance * * *, upon a showing of the recipient's inability to be self-supporting or a substantial change in circumstance * * *, including financial hardship."

By its terms, Domestic Relations Law § 236 (B) (9) (b) does not place any time limit on an application for modification of the maintenance provision of a judgment. The defendant does not dispute that the obligation to pay maintenance may be extended past the original durational period set forth in the divorce judgment, provided that the application for an extension is made while the support obligation remains in effect. In *Klotz v Klotz* (150 AD2d 308), the former wife's application to modify the judgment to continue maintenance payments was

made just days before the original 18-month durational period of maintenance was to expire. The Court ordered maintenance to continue until her death or remarriage, based on her inability to be self-supporting (*see, Cornelius J. D. v Linda J. D.,* 202 AD2d 1069; *Daye v Daye,* 170 AD2d 963). The defendant contends, however, that a durational maintenance provision in a judgment should be treated as final and unmodifiable in those instances where no extension was sought before the durational period expired. We conclude that neither the history of Domestic Relations Law § 236 (B) (9) (b) nor the relevant case law supports the defendant's position.

Generally, the provisions of a divorce judgment are considered final and binding on the parties and may not be collaterally attacked "absent unusual circumstances or explicit statutory authorization" (*Rainbow v Swisher,* 72 NY2d 106, 110). The policy favoring the finality of judgments has been applied, for example, to preclude postjudgment modification of the distribution of the assets of a marriage based on unforeseen changes in their value (*see, Siegel v Siegel,* 132 AD2d 247, 253-254), and to preclude untimely claims of error which would "subvert the policy of upholding settled domestic relations" (*Rainbow v Swisher, supra,* at 111). The policy favoring finality does not apply, however, where the issue is spousal support. For more than 100 years, courts have had explicit statutory authority to retain continuing jurisdiction over divorce actions in order to modify the support provisions of divorce decrees.

Pursuant to Code of Civil Procedure § 1771, as amended in 1895, and later enacted as Civil Practice Act § 1170, courts had the authority to modify a provision for the support of a wife in a final judgment of divorce at any time upon notice to the other party. "The effect of that section was to write into every final judgment of divorce, entered after its enactment, a reservation, although none such was contained in the decree itself, of jurisdiction in the court to vary, modify or annul any provisions contained therein for alimony or to insert such provisions in the decree by amendment if previously it had contained no such award" (*Waddey v Waddey,* 290 NY 251, 255; *see also, Karlin v Karlin,* 280 NY 32; 3A Freed, Brandes and Weidman, Law and the Family New York § 12.16, at 196-197 [2d ed rev 1993]).

This reservation of authority to modify the support provision of a divorce judgment at any time after final judgment became, in substance, Domestic Relations Law former § 236 (*see, McMains v McMains,* 15 NY2d 283, 287; *Joffe v Spector,* 27

AD2d 406, 408-409). Former section 236 permitted the court to issue an order, subsequent to the final judgment, directing the husband to "provide suitably for the support of the wife as, in the court's discretion, justice requires," even where the final judgment did not include an award of alimony (*see, Pap v Pap,* 51 AD2d 1091 [former wife awarded support payments for one year, even though divorce decree provided that the former husband would not be required to support her]; *see also, Ludwig v Ludwig,* 38 AD2d 214 [former wife given leave to replead to seek modification of parties' agreement with respect to alimony 30 years after the divorce]).

The courts' long-standing authority to modify the alimony provision of a divorce decree was based on the theory "that the husband's duty to support his wife is continued in the form of alimony which is subject to recalculation to fulfill that duty" (*McMains v McMains, supra,* at 287). The enactment of the Equitable Distribution Law in 1980 (L 1980, ch 281) did not alter the court's continuing jurisdiction with respect to spousal support. Domestic Relations Law § 236 (A) (1) permits modification of a pre-1980 divorce judgment, even if the original judgment did not make any provision for alimony, and the statute does not impose a time limit on such applications (*see, Dunn v Dunn,* 124 AD2d 309 [application for an increase in alimony granted 24 years after the divorce]). Domestic Relations Law § 236 (B) (9) (b) similarly does not impose a time limit on an application to modify the maintenance provision of a post-1980 divorce judgment. Thus, under the gender-neutral provisions of the Equitable Distribution Law, a spouse's duty to support his or her former spouse is continued in the form of maintenance, which is subject to recalculation upon a showing of a change in circumstance or inability to be self-supporting.

Although section 236 (B) (9) (b) differs from section 236 (A) (1) in that it does not include an express provision that the judgment may be modified to provide maintenance where none was originally awarded, such a modification would be permitted (*see, Wyser-Pratte v Wyser-Pratte,* 66 NY2d 715, *revg* 111 AD2d 99 [former wife, who was denied any maintenance in the judgment, was entitled to a hearing on her request for a modification of the judgment under Domestic Relations Law § 236 (B) (9) (b) on the ground that she was unable to become self-supporting]; *Basi v Basi,* 136 AD2d 945 [change in circumstance entitled former wife to receive maintenance, where judgment did not award any maintenance but reserved her right to seek it in the future]; *cf., Lewis v Lewis,* 183 AD2d

875 [judgment, which incorporated separation agreement, failed to provide any maintenance for the wife; her application for a modification was denied because she failed to make the required showing of extreme hardship]).

The language in section 236 (B) (9) (b) and its history, as well as public policy, do not support the defendant's position that the plaintiff is precluded from seeking a reinstatement of maintenance simply because the durational period of maintenance in the judgment has expired. Although the case at bar does not involve a separation agreement, it is noteworthy that under former and present General Obligations Law § 5-311, courts have the authority to modify separation agreements when necessary to prevent a former spouse from becoming a public charge (*see, McMains v McMains, supra; Curran v Curran,* 169 AD2d 975; *Lasky v Lasky,* 163 Misc 2d 859, *affd* 216 AD2d 366; Domestic Relations Law § 236. [B] [3]).

The requirement that a support obligation must be currently in existence to obtain a modification of the judgment has been imposed in cases involving foreign divorce decrees where modification is sought pursuant to Family Court Act § 466 (c). That rule is based on the language in that section, as well as on the limited jurisdiction of the Family Court (*see, Matter of Silver v Silver,* 36 NY2d 324; *Langdon v Mohr,* 99 AD2d 957, *affd* 64 NY2d 819; *Beaverson v Beaverson,* 72 AD2d 963; *Wertheimer v Wertheimer,* 50 AD2d 879; *see also, Matter of Pearson v Pearson,* 69 NY2d 919), and it has no application here.

The Supreme Court based its decision not only on the policy favoring the finality of judgments but on the ground that the Equitable Distribution Law implicitly favors a fixed term of maintenance. Under the Equitable Distribution Law, the purpose of a maintenance award is to provide the economically-disadvantaged spouse with an opportunity to achieve independence. However, the Legislature also recognized that permanent maintenance may be a necessity under certain circumstances, such as in marriages of long duration or where the homemaker spouse sacrificed a career (*see,* Mem of Assembly, 1980 NY Legis Ann, at 129). "[I]mplicit in the statutory scheme as a whole, is the view that upon dissolution of the marriage there should be a winding up of the parties' economic affairs and a severance of their economic ties by an equitable distribution of the marital assets. Thus, the concept of alimony, which often served as a means of lifetime support and dependence for one spouse upon the other long after the marriage was over, was replaced with the concept of maintenance

which seeks to allow 'the recipient spouse an opportunity to achieve [economic] independence' " (*O'Brien v O'Brien,* 66 NY2d 576, 585, quoting Mem of Assembly, 1980 NY Legis Ann, at 130). Maintenance should continue only as long as required to render the recipient spouse self-supporting (*see, Granade-Bastuck v Bastuck,* 249 AD2d 444; *De La Torre v De La Torre,* 183 AD2d 744).

Nevertheless, a durational period of maintenance is not favored in those circumstances where economic independence at a level roughly commensurate with the marital standard of living is not a realistic goal (*see, Summer v Summer,* 85 NY2d 1014; *Baker v Baker,* 240 AD2d 911; *Shad v Shad,* 213 AD2d 622). In response to evidence that the courts were failing to award adequate maintenance based on unrealistic assumptions regarding the ability of wives in long-term marriages to become self-supporting, the Legislature in 1986 amended Domestic Relations Law § 236 (B) (6) to require courts to consider the marital standard of living in making maintenance awards and to freely award lifetime maintenance where appropriate (*see,* Mem of Assembly, 1986 NY Legis Ann, at 356; *Hartog v Hartog,* 85 NY2d 36, 50-52; Scheinkman, New York Law of Domestic Relations § 15.5, at 592).

While it is implicit in the provisions of the Equitable Distribution Law that a former spouse's duty of support will end, and the parties' economic ties will be severed, in instances where the goal of economic independence can be met, where that is not a realistic goal or where a subsequent change in circumstance prevents that goal from being reached, Domestic Relations Law § 236 (B) (9) (b) allows the courts to continue, as they have done historically, to impose a duty of support on a former spouse. We decline to read into section 236 (B) (9) (b) a limitation on the court's authority to modify the spousal support provision of a decree which the Legislature has not made explicit.

However, a hearing is necessary to consider the parties' financial circumstances. Accordingly, the appeal from the decision is dismissed, the order is reversed, on the law, the motion is granted to the extent of directing a hearing on the motion, and the matter is remitted to the Supreme Court, Suffolk County, for a hearing to be held expeditiously, given the plaintiff's medical condition.

GOLDSTEIN, LUCIANO and SMITH, JJ., concur.

Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (*see, Schicchi v Green Constr. Corp.,* 100 AD2d 509); and it is further,

Ordered that the order is reversed, on the law, the plaintiff's motion is granted to the extent of directing a hearing on her application, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith; and it is further,

Ordered that the appellant is awarded one bill of costs.