******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ELANA GERSHON *v.* RONALD BACK
(AC 42778)

Lavine, Bright and Beach, Js.*

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved pursuant to a foreign judgment of dissolution, appealed to this court from the judgment of the trial court dismissing her motion to open the judgment for lack of subject matter jurisdiction. Prior to their marriage in New York, the parties entered into a prenuptial agreement, which the New York dissolution court determined was valid. During the dissolution proceedings, the parties entered into a stipulation that provided, inter alia, that it superseded the prenuptial agreement, that it was incorporated but not merged into the dissolution judgment and that it was to be governed by New York law. Following the dissolution of their marriage, the parties both moved to Connecticut, and the plaintiff registered the New York dissolution judgment in Connecticut pursuant to statute (§ 46b-71). In her motion to open, the plaintiff sought to have the trial court open the dissolution judgment, vacate the stipulation and order a new trial, claiming that the judgment was obtained through the defendant's fraudulent conduct in that he made material misrepresentations and failed to disclose certain assets in his sworn financial statement at the time the stipulation was negotiated. Following a hearing, the trial court, applying New York law, dismissed the plaintiff's motion to open, concluding that to challenge the validity of the stipulation, which was incorporated but not merged into the dissolution judgment, the plaintiff was required to bring a plenary action. *Held* that, although the trial court improperly dismissed the plaintiff's motion to open the dissolution judgment for lack of subject matter jurisdiction because that court had jurisdiction to consider the motion pursuant to the applicable statutes (§§ 46b-1 and 46b-71 (b)), this court concluded that, contrary to the plaintiff's contention, the trial court properly determined that the plaintiff was required to bring a plenary action to vacate the stipulation, as the New York rule requiring a party to challenge a separation agreement that is not merged into the dissolution judgment through a plenary action is substantive and, as such, § 46b-71 and the stipulation required the trial court to apply that rule to the motion to open; accordingly, the trial court should have denied the motion to open rather than dismissed it, and the case was remanded with direction to render judgment denying the plaintiff's motion to open.

Argued May 20—officially released November 10, 2020

*Procedural History*

Motion by the plaintiff to open a foreign judgment of dissolution, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Michael E. Shay*, judge trial referee, dismissed the plaintiff's motion, and the plaintiff appealed to this court. *Improper form of judgment*; *judgment directed.*

*Alexander J. Cuda*, for the appellant (plaintiff).

*Joseph T. O'Connor*, for the appellee (defendant).

*Opinion*

LAVINE, J. The present appeal concerns the judgment rendered by the trial court when it dismissed the motion to open the 2011 New York judgment of marital dissolution (motion to open) filed by the plaintiff, Elana Gershon, some years after she registered the judgment in Connecticut. The plaintiff claims on appeal that the trial court improperly dismissed her motion to open for lack of subject matter jurisdiction by applying New York procedural rules, rather than Connecticut procedural rules, when it dismissed the motion.[1] We conclude that the court properly determined that New York law governed the plaintiff's rights with respect to the parties' stipulation, but we agree with the plaintiff that the court improperly dismissed the motion to open for lack of subject matter jurisdiction. The form of the judgment is improper. We, therefore, reverse the judgment of dismissal and remand the case with direction to render judgment denying the motion to open.

The record discloses the following contentious and protracted litigation history between the plaintiff and her former husband, the defendant, Ronald Back.[2] In August, 1997,[3] prior to their marriage, the parties entered into a prenuptial agreement.[4] The plaintiff was a school psychologist, and the defendant was a businessman with a substantial interest in a family business. The parties married on August 16, 1997, resided in New York state, and had two children together. As the dissolution judgment, reciting the parties' stipulation, states: "[c]ertain unhappy and irreconcilable differences [arose] between the parties, as a result of which they . . . separated and have been living apart from each other since in or about February 6, 2009 . . . ." On or about the date of separation, the plaintiff, then known as Elana Back, commenced an action for divorce in the New York Supreme Court, county of Westchester (New York court). During the course of the divorce proceedings, the parties engaged in extensive litigation, discovery, and negotiations regarding the prenuptial agreement, which the plaintiff sought to invalidate. The New York court determined that the prenuptial agreement was valid.[5] On April 11, 2011, the parties settled, for the time being, their dispute over the division of marital property. The parties signed a stipulation that provided in part that it superseded "the [p]renuptial [a]greement, [which] shall be of no further force or effect upon the effective date of this [stipulation]." The stipulation further provided, among other things, that it was to be incorporated by reference, *but not merged,* in the judgment of dissolution and that it "may be enforced independently of such decree or judgment [of dissolution]."[6] The stipulation also provided that "[a]ll matters affecting the execution, interpretation, performance and enforcement of this [a]greement and *the rights of the*

*parties hereto shall be governed by the laws of the [s]tate of New York.*"[7] (Emphasis added.) Thereafter, the New York court rendered a judgment of dissolution of the parties' marriage on May 11, 2011.

The plaintiff remarried three days following her divorce from the defendant and moved with the parties' children to Greenwich. The defendant eventually moved to Connecticut, as well. The plaintiff registered the dissolution judgment in the Superior Court in the judicial district of Stamford-Norwalk on October 27, 2014, pursuant to General Statutes § 46b-71 (a). On November 24, 2014, the plaintiff filed a motion to modify child support (motion to modify) as permitted by the dissolution judgment.[8] The parties again engaged in extensive discovery with respect to the defendant's finances. On April 26, 2017, pursuant to New York Domestic Relations Law,[9] the trial court granted the plaintiff's motion to modify, increased the defendant's monthly child support obligation and awarded the plaintiff attorney's fees.[10] In a separate order, the court awarded the defendant a credit in light of his having paid a portion of the college room and board expenses of the parties' older child.

On September 5, 2018, the plaintiff filed the motion to open that is the subject of the present appeal. In that motion, the plaintiff sought to have the court open the dissolution judgment, vacate the stipulation, and order a new trial,[11] "as the judgment was obtained through the fraudulent conduct of the [defendant] and there is a reasonable probability that the result of the *settlement* would have been different had the defendant not made material misrepresentations of fact to the court and to the plaintiff in his sworn financial statement provided at the time of settlement."[12] (Emphasis added.) In connection with her motion to open, the plaintiff sought postjudgment discovery of the defendant's financial records. The defendant opposed both the plaintiff's motion to open and her request for postjudgment discovery. The parties filed numerous motions, objections, and memoranda with respect to the motion to open and request for discovery.

On October 26, 2018, counsel for the parties appeared before the court at which time the court ruled on several of the parties' outstanding motions and objections not at issue here. At the time, the court stated that, in Connecticut, postjudgment discovery generally is not permitted in the absence of a demonstration by the plaintiff that she has more than a "mere suspicion" of fraud on the part of the defendant in his conduct relating to the execution of the stipulation. The court specifically referenced *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 269–70, 540 A.2d 713 (1988).[13] To determine whether the plaintiff could demonstrate more than a mere suspicion of the defendant's alleged fraud,[14] the court ordered the parties to appear for an *Oneglia* hearing on Decem-

ber 4, 2018. Furthermore, because the parties had agreed that the stipulation was to be governed by New York law, the court ordered counsel for the parties to file simultaneous memoranda of law two weeks prior to the start of the *Oneglia* hearing to address "the standard in New York for opening a matrimonial judgment. And . . . under all the facts and circumstances of this case is there either res judicata or was there accord and satisfaction, or whatever that would militate against this particular motion, in other words, would support a motion to dismiss [the motion to open]. That's what I'm looking for."[15]

The court conducted an *Oneglia* hearing on December 4, 5, and 6, 2018. Both parties testified at the hearing, as well as the plaintiff's forensic accountant, Lee Sanderson. On December 21, 2018, counsel for the parties appeared for final arguments. Counsel for the plaintiff argued that the evidence demonstrated that the defendant had failed to disclose significant assets at the time the stipulation was negotiated. Counsel for the defendant argued that eight years after the plaintiff had received the benefits of the stipulation, she was precluded from relitigating the parties' divorce on the grounds of collateral estoppel, ratification, and lack of evidence to sustain the allegation of fraud. Counsel for the defendant also argued that the *plaintiff could not challenge the stipulation by way of a motion to open the judgment; rather, she had to file a plenary action sounding in contract*; but that the statute of limitations had run on such an action. Counsel further argued that, given the validity of the prenuptial agreement, the plaintiff would have received far less under the prenuptial agreement than she received under the stipulation and, therefore, she could not argue credibly that she had sustained any damages.[16]

At the conclusion of the arguments, the court explained that, under *Oneglia*, if the evidence demonstrated that the plaintiff had more than a mere suspicion of fraud, the discovery process would begin, and thereafter the court would hold a hearing to determine whether the dissolution judgment should be opened. If the court found that the plaintiff had no more than a mere suspicion of fraud, there would be no discovery regarding the defendant's finances. Without additional discovery, the plaintiff would have to decide whether to pursue her motion to open with the evidence she had presently.

On January 31, 2019, the court issued a memorandum of decision regarding the *Oneglia* hearing, the outcome of which determined whether the plaintiff could conduct discovery of the defendant's finances. As a preliminary matter, the court stated that two facts were critical to its decision, to wit: (1) *the stipulation was incorporated in, but not merged into, the dissolution judgment and* (2) *the stipulation provided that all matters related*

*to it were to be governed by New York law.* The court recounted the relevant facts and procedural history of the case and that it previously had ruled on the plaintiff's motion to modify and the defendant's motion for child support credit. The court then stated that the present matter came before the court by way of the plaintiff's motion to open.

As it did at the October 26, 2018 proceeding, the court stated that Connecticut's rules of practice do not permit postjudgment discovery unless the plaintiff can show that there is more than a "mere suspicion" of fraud on the part of the defendant in his conduct related to the execution of the stipulation. See *Oneglia* v. *Oneglia*, supra, 14 Conn. App. 269–70. The court noted that it had conducted the *Oneglia* hearing and argument over four days in December, 2018, and recounted its order that, because "the parties had agreed that New York law would be controlling, prior to the hearing [it had] ordered each counsel to submit a memorandum of law addressed to the holdings of New York law regarding the opening of a matrimonial judgment based upon an unmerged stipulation, and whether or not there were facts in this case that would support a *motion to dismiss the motion to open.*" (Emphasis added.) Having reviewed the memoranda of law submitted by counsel and the relevant New York law, the court concluded that the parties had arrived at their choice of law decision without fraud or duress, with the advice of counsel, and that their choice of New York law should be given effect, citing *Elgar* v. *Elgar*, 238 Conn. 839, 848, 679 A.2d 937 (1996) (court should give effect to express choice of law by parties to contract provided it was made in good faith). The court also concluded that an established body of New York law relating to postjudgment discovery in matrimonial cases was controlling and *not Oneglia*.

The court cited the New York law it had considered in reaching its decision, stating that "[t]here is a clear societal benefit in reliance upon the finality of judgments, particularly in family relations matters, where the judgment is based upon an agreement of the parties. It is the general policy of the courts in New York to uphold settled domestic relations judgments. *Rainbow* v. *Swisher*, 72 N.Y.2d 106, 110–11, 527 N.E.2d 258, 531 N.Y.S.2d 775 (1988). To that end, the courts have drawn a distinction between actions to overturn such judgments as opposed to enforcing their provisions. *It is well settled that a party to a stipulation that is incorporated, but not merged, into a judgment of divorce cannot challenge the enforceability of the stipulation by way of motion but, rather, must do so by commencement of a plenary action.* Conversely, a party seeking to enforce the terms of such a stipulation may do so either by motion to enforce the judgment or by a plenary action. *Anderson* v. *Anderson*, 153 App. Div. 3d 1627, 1628, 61 N.Y.S.3d 405 (2017) . . . . In fact, *it is error*

*for a court to entertain such a motion on its merits. Spataro* v. *Spataro*, 268 App. Div. 2d 467, 468, 702 N.Y.S.2d 342 (2000)." (Citations omitted; emphasis added; internal quotation marks omitted.) In light of the law and under the circumstances, the court stated that it found "it appropriate to consider a motion *to dismiss*." (Emphasis added.)

The court continued, stating, "[i]n general, financial disclosure is inappropriate unless and until the existing separation agreement is set aside. *Rupert* v. *Rupert*, 190 App. Div. 2d 1027, 594 N.Y.S.2d 663 (1993). Referring to a new operative standard set forth in [New York] Domestic Relations Law § 236 (B), a [New York] Appellate Division court held that . . . to permit such discovery would require an affirmative, factual showing, at least prima facie that the agreement was unfair or unreasonable when executed or unconscionable at the time of the entry of final judgment. That lacking, the court disallowed the request for discovery. *Oberstein* v. *Oberstein*, 93 App. Div. 2d 374, 377–79, 462 N.Y.S.2d 447 (1983)."[17] (Emphasis omitted; internal quotation marks omitted.) The court in the present case also recognized the " 'sensitive balancing' " permitted under New York Civil Practice Law and Rules 3102 (c) and utilized in *Moore* v. *Moore*, Docket No. 2013/995, 2015 WL 4530304 (N.Y. Sup. July 9, 2015) (decision without published opinion, 48 Misc. 3d 1214 (A), 22 N.Y.S.3d 138 (2015)). The court stated: "In [*Moore*], a subpoena duces tecum was served in connection with a motion to vacate a [dissolution] judgment, the provisions of which stemmed from an agreement, incorporated but not merged in the judgment, and was therefore subject to dismissal, there being no pending plenary action on the underlying agreement."

The court continued, stating that, given the circumstances of the present case and under the standard articulated by the New York courts, "even applying a sensitive balancing, the plaintiff had failed to meet her burden with at least a prima facie showing either that the stipulation was unfair or unreasonable when negotiated, or unconscionable when the dissolution judgment was entered, or that the defendant's action amounted to wilful fraud or fraudulent concealment. Moreover, [the plaintiff] has not established that, even if the judgment were to be opened and the stipulation were to be set aside, that the resulting judgment would likely be substantially different."[18] The court denied the plaintiff's request for discovery and ordered that the "matter shall be set down for argument as to show cause as to why the plaintiff's motion to open . . . should not be *denied* consistent with New York law."[19] (Emphasis added.)

The parties and their counsel appeared in court on March 19, 2019. The court commenced the proceeding by stating: "I think that since the matter started with a

hearing with regard to postjudgment discovery and was not per se a hearing on the merits, I believe that the appropriate course of action is to dismiss . . . because it's jurisdictional and jurisdiction . . . always in this particular instance . . . implicates the subject matter, [which] can [be] raise[d] . . . at any time and even by the court and that's Practice Book [§] 10-33 . . . ." The court then explained that the judgment was subject to New York law and that the gravamen of the motion to open was the prenuptial agreement. Prior to the dissolution of the parties' marriage, the court noted, a New York court had determined that the prenuptial agreement was valid and that there was no fraud on the part of the defendant. The trial court then reviewed and analyzed the evidence that supported the New York court's decision regarding the absence of fraud. The court concluded: "[T]he bottom line, when all is said and done, is that *New York law says you cannot attack the* [*judgment*] *based on a motion to open. It must be done by a plenary action, a contract action, and that is why I am going to dismiss this action immediately.*"[20] (Emphasis added.) See *Spataro* v. *Spataro*, supra, 268 App. Div. 2d 468 ("Supreme Court erred in entertaining defendant's motion on merits, as motion is not proper vehicle for challenging a separation agreement incorporated but not merged into divorce judgment. Rather, defendant should have commenced plenary action seeking vacatur or reformation of the agreement.").

On April 5, 2019, the plaintiff appealed from the judgment of dismissal, raising numerous claims. Of the plaintiff's several claims, the determinative one is whether the court improperly dismissed the motion to open on the ground that it lacked subject matter jurisdiction.[21] We agree with the plaintiff that the court improperly dismissed the motion to open on the ground that it lacked subject matter jurisdiction but conclude that the court properly determined that the plaintiff was able to challenge the stipulation only by bringing a plenary action. In other words, the court should have denied the plaintiff's motion to open, hence, the form of the judgment is improper.

We begin our analysis with the applicable standard of review. "[A] determination regarding a court's subject matter jurisdiction is a question of law . . . ." *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 816, 832 A.2d 90 (2003). The plenary standard of review applies to questions of law. See *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 155, 953 A.2d 1 (2008). "[T]he question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time." (Internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). "Once the question of lack of jurisdiction of a court is raised . . . [t]he court must fully resolve it before proceeding further with the case. . . . Whenever a

court finds that it has no jurisdiction, it must dismiss the case . . . ." (Citation omitted; internal question marks omitted.) *Rathblott* v. *Rathblott*, supra, 817.

"[E]very presumption favoring jurisdiction should be indulged." *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 421 n.3, 426 A.2d 1324 (1980). "A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999).

As we noted previously, the plaintiff registered the New York judgment of dissolution in Connecticut in October, 2014, pursuant to § 46b-71, which provides in relevant part: "(a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or vacated and that the enforcement of such judgment has not been stayed or suspended
. . . .

"(b) Such foreign matrimonial judgment *shall become a judgment of the court of this state* where it is filed and *shall be enforced and otherwise treated in the same manner as a judgment of a court of this state* . . . . A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, *in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling.*" (Emphasis added.)

Under General Statutes § 46b-1 (4), "the Superior Court is vested with plenary and general subject matter jurisdiction over legal disputes in family relations matters . . . ." (Internal quotation marks omitted.) *Reinke* v. *Sing*, 328 Conn. 376, 389, 179 A.3d 769 (2018). "With subject matter jurisdiction established, the trial court's task is to apply the statute to the facts of a particular case, indeed, interpreting statutes and applying the law to the facts before it [fall within] the traditional province of the trial court. . . . Upon review of the trial court's actions, therefore, [our] role is to review the trial court's exercise of its authority to act." (Internal quotation marks omitted.) Id., 390.

Section 46b-71 provides that the Superior Court where the foreign dissolution judgment is registered has jurisdiction to modify the judgment, provided that it applies the substantive law of the foreign jurisdiction. See *Vitale* v. *Krieger*, 47 Conn. App. 146, 148–49, 702 A.2d 148 (1997). The record, in fact, discloses that the trial court previously exercised its jurisdiction over the parties' dissolution judgment when it granted the plaintiff's motion to modify. We, therefore, conclude that the court improperly determined that it lacked subject matter jurisdiction over the plaintiff's motion to open.

As the court stated in its January 31, 2019 memorandum of decision, two facts were critical to its decision: (1) the stipulation was incorporated but not merged in the dissolution judgment and (2) the stipulation provided that all matters related to it were to be governed by New York law.

Nevertheless, because the issue of whether New York substantive law precluded the court from granting the plaintiff the relief she requested raises a question of law, we consider whether the court should have denied the plaintiff's motion to open. "A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." (Internal quotation marks omitted.) *Barber* v. *Barber*, 114 Conn. App. 164, 168, 968 A.2d 981, cert. denied, 292 Conn. 915, 973 A.2d 661 (2009). The court found that the parties bargained in good faith for New York law to apply to their stipulation. Although the plaintiff moved to open the judgment of dissolution, in reality, it is the stipulation that is at issue in the present matter, not the judgment of dissolution. Had the plaintiff commenced a plenary contract action to vacate the stipulation, the trial court would have had jurisdiction to adjudicate the action by applying the substantive law of New York.[22] See *Wayne* v. *Wayne*, Superior Court, judicial district of Litchfield, Docket No. FA-94-0549968 (February 17, 1999) (when certain provisions in New York agreement do not merge into judgment, they retain contractual significance).

Although the court conducted an *Oneglia* hearing in December, 2018, in its January 31, 2019 memorandum of decision, it recognized that *Oneglia* did not control postjudgment discovery and applied New York law to the evidence presented at the hearing. The court further recognized that a stipulation that is incorporated, but

not merged, into a New York dissolution judgment may not be challenged by way of a motion to open the dissolution judgment, but only by the commencement of a plenary action seeking to undo the stipulation itself. See *Anderson* v. *Anderson*, supra, 153 App. Div. 3d 1628. The court also recognized that it is error for a court to entertain a motion to open such a judgment on its merits when the underlying stipulation has not been set aside. See *Spataro* v. *Spataro*, supra, 268 App. Div. 2d 468.[23]

The plaintiff argues that the court improperly applied New York procedural law rather than Connecticut procedural law, because the rule requiring a plenary action to challenge a stipulation not merged into the judgment of dissolution is procedural and not substantive. She also argues that discovery, which is what she sought in the trial court, is inherently procedural. She further contends that the fact that § 46b-71 sets forth the procedure for enforcing foreign matrimonial judgments in Connecticut confirms that the New York rule is procedural. Finally, the plaintiff posits that the court, up until the time it improperly applied New York procedural law to deny her discovery request, recognized the procedural nature of the issues before it and applied Connecticut's procedural rules under *Oneglia*.

The defendant argues that the New York rule requiring that the validity of a stipulation be challenged in a plenary action is substantive and that the trial court properly applied it. He also contends that the New York rule is predicated on public policy that recognizes that the valid substantive contractual rights of the parties take precedence over inchoate and previously waived statutory rights. We agree with the defendant that the New York rule requiring a plenary action to challenge the terms of a settlement agreement, incorporated but not merged into the judgment of dissolution, is substantive.

"The judicial rule of thumb, that in a choice of law situation the forum state will apply its own procedure . . . brings us to the vexing question of which rules are procedural and which substantive. These terms are much talked about in the books as though they defined a great divide cutting across the whole domain of law. But, of course, substance and procedure are the same keywords to very different problems." (Citation omitted; internal quotation marks omitted.) *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 650, 579 A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990).

"The ordinary rule is that where a cause of action arising in another [s]tate is asserted in our courts, we look to the laws of that [s]tate to determine all matters of substance involved in it, but that matters of procedure are governed by our own law . . . ." *Broderick* v. *McGuire*, 119 Conn. 83, 101, 174 A. 314 (1934). "While

there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress. . . . Where the [law] is not substantive, i.e., not directed to the right itself, but rather to the remedy, it is generally considered a distinctly procedural matter." (Internal quotation marks omitted.) *DuBaldo Electric, LLC* v. *Montagno Construction, Inc.*, 119 Conn. App. 423, 449–50, 988 A.2d 351 (2010). In *Weber* v. *U.S. Sterling Securities, Inc.*, 282 Conn. 722, 735–41, 924 A.2d 816 (2007), our Supreme Court addressed whether a New York rule that prohibited class actions was procedural or substantive in nature. The court concluded that "[i]t is clear that [New York Civil Practice Law and Rules] § 901 (b) [McKinney 2006] is substantive because it abridges the rights of individuals to bring class action claims in New York state. We have determined that statutes, like § 901 (b), that affect an individual's cause of action clearly are substantive in nature. See *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 219, 901 A.2d 673 (2006) ([i]t is beyond dispute that [General Statutes] § 1-1d is substantive in nature because it generally gives persons . . . legal capacity, rights, powers, privileges, duties, liabilities)." (Internal quotation marks omitted.) *Weber* v. *U.S. Sterling Securities, Inc.*, supra, 739.

Consequently, we must examine whether the New York rule at issue in this case, i.e., that the validity of a stipulation must be challenged by means of a plenary action, defines rights under New York law or merely provides a remedy for enforcing rights. Under New York law, a stipulation of settlement that is incorporated but not merged into a judgment of divorce is a contract subject to principles of contract construction and interpretation. See, e.g., *D'Sa* v. *D'Sa*, 182 App. Div. 3d 535, 536, 122 N.Y.S.3d 344 (2020); *Campello* v. *Alexandre*, 155 App. Div. 3d 1381, 1382, 65 N.Y.S.3d 348 (2017); *Anderson* v. *Anderson*, supra, 153 App. Div. 3d 1628. A stipulation of settlement not merged into the judgment is independently binding on the parties, and New York courts may not impair the parties' contractual rights under the agreement by modifying the divorce judgment. See *Fine* v. *Fine*, 191 App. Div. 2d 410, 594 N.Y.S.2d 309 (1993); see also *Lambert* v. *Lambert*, 142 App. Div. 2d 556, 558, 530 N.Y.S.2d 223 (1988) ("while a judgment of divorce can be attacked pursuant to [New York Civil Practice Law and Rules] 5015, the separation agreement will remain unimpeached unless challenged in a plenary action").[24] For example, in *Pellot* v. *Pellot*, 305 App. Div. 2d 478, 479–80, 759 N.Y.S.2d 494, (2003), the court held that the trial court incorrectly concluded that the defendant could not enforce her right to the amount of child support set forth in the parties' separation agreement because the family court had made a downward modification of the plaintiff's child support

obligation in the judgment of dissolution. The court concluded: "[T]he [defendant] is entitled to enforce [the child support] provisions of the stipulation and to recover the difference between the amount of child support agreed to in the stipulation and the reduced amount set by the [f]amily [c]ourt." Id., 480. Thus, it is clear to us that, under New York law, the parties to a separation agreement that is not merged into a dissolution judgment have contractual rights that, in many instances, cannot be undone by modifying the judgment of dissolution.

It is for this reason that under New York domestic relations law, "financial disclosure in support of a claim to overturn a separation agreement is inappropriate until the existing separation agreement is set aside. . . . The only exception to this rule requires the moving party to establish a 'legitimate factual predicate' for setting aside the existing agreement. . . . The spouse seeking discovery about the other spouse's finances—after execution of an agreement—must adduce sufficient factual support constituting a legitimate basis to warrant modification or vacatur of the support provisions of the separation agreement . . . . The Fourth Department has adopted this requirement for a legitimate factual predicate before allowing discovery by a party to overturn a separation agreement." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Moore*, supra, 2015 WL 4530304 *2; see footnote 17 of this opinion. Significantly, such discovery, even where permitted, cannot be used to support a motion to open the judgment of dissolution. Instead, any challenge to whether the separation agreement was procured by fraud, as claimed by the plaintiff in the present case, must be brought in a plenary action. See id., *8.[25] There is simply no *right* under New York law to challenge the validity of a separation agreement through a motion to open the dissolution judgment. The New York rule affects the very existence of the cause of action. Consequently, we conclude that the New York rule requiring a party to challenge a separation agreement through a plenary action is substantive and not procedural. As such, § 46b-71 and the parties' stipulation required that the trial court apply this New York substantive rule to the plaintiff's motion to open.

In the present case, after conducting an *Oneglia* hearing, the court found that the plaintiff had failed to meet her burden with at least a prima facie showing either that the stipulation was unfair or unreasonable when negotiated or unconscionable when the dissolution judgment was entered, or that the defendant's actions amounted to wilful fraud or fraudulent concealment, or that, if the judgment were set aside, the resulting judgment would be different. The court, however, determined that it erred in entertaining the merits of the plaintiff's discovery motion, which was ancillary to the motion to open, because a motion to open is not the

proper vehicle to challenge a stipulation incorporated, but not merged, into a judgment of dissolution. See *Spataro* v. *Spataro*, supra, 268 App. Div. 2d 468. To challenge the validity of the stipulation that was not merged into the dissolution judgment, New York substantive law requires a party to bring a plenary action. Id.; see also *Moore* v. *Moore*, supra, 2015 WL 4530304, *8; *Marshall* v. *Marshall*, 124 App. Div. 3d 1314, 1317, 1 N.Y.S.3d 622 (2015); *Brody* v. *Brody*, 82 App. Div. 3d 812, 812, 918 N.Y.S.2d 383 (2011); *Lepe* v. *Rodriguez*, 73 App. Div. 3d 710, 710–11, 899 N.Y.S.2d 856 (2010); *Barany* v. *Barany*, 71 App. Div. 3d 613, 614, 898 N.Y.S.2d 146 (2010). In March, 2019, the court recognized that the plaintiff had to bring a plenary action to challenge the stipulation. We agree with the court's conclusion that, under New York substantive law, the plaintiff was required to bring a plenary action. We disagree, however, with the court's conclusion that it lacked subject matter jurisdiction. The court had jurisdiction to consider the motion to open pursuant to §§ 46b-1 and 46b-71 (b), and, therefore, it should have denied, rather than dismissed, the motion to open.

The form of the judgment is improper, the judgment dismissing the plaintiff's motion to open is reversed and the case is remanded with direction to render judgment denying the motion to open.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In addition, the plaintiff claims that the court (1) improperly addressed the merits of the motion to open after determining that it lacked subject matter jurisdiction, (2) abused its discretion by failing to grant her motion for a continuance after her counsel disclosed that she intended to withdraw her appearance, and (3) erred in finding that the plaintiff had failed to demonstrate probable cause for postjudgment discovery under *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 540 A.2d 713 (1988), or comparable New York law. We need not address these claims as we conclude that, pursuant to New York law, the trial court properly determined that the plaintiff was required to raise her claims with respect to the parties' stipulation by means of a plenary action.

The plaintiff's additional claims are subsumed within her principal claim that the court improperly dismissed her motion to open. As we explain in the body of this opinion, the court properly determined that all matters regarding the stipulation are governed by New York law and that the plaintiff was required to bring a plenary action to challenge her rights under the stipulation. Although the trial court held a hearing to determine whether the plaintiff had more than a mere suspicion of fraud to permit postjudgment discovery and made certain factual findings in that regard, it later determined that it improperly had entertained the motion to open because the plaintiff had not commenced a plenary action to vacate the stipulation.

[2] Since 2014, when the plaintiff registered the New York dissolution judgment in Connecticut, more than 280 entries have been made on the trial court docket.

[3] The trial court found that the prenuptial agreement is undated. The defendant signed it on August 14, 1997, and the plaintiff, then known as Elana Horowitz, signed it on August 12, 1997.

[4] We set forth portions of the parties' prenuptial agreement to provide context for the issues in the present appeal. The trial court found that § 10, "PAYMENT UPON OPERATIVE EVENT," is the provision germane to the plaintiff's motion to open.

"WHEREAS, a marriage is about to be solemnized between the parties . . . [and] the parties desire to fix . . . certain of their respective rights . . . that shall or may accrue to each of them in certain real and personal

property; and

". . . both parties acknowledge that they understand their respective rights . . . as provided for in [New York] Domestic Relations Law [§] 236-B and that they make this Agreement with the understanding that they are hereby settling the prospective terms . . . of the marriage relationship with respect to matters of property rights, and they further understand that this Agreement is in lieu of their prospective rights to litigate such matters before a court of competent jurisdiction; and

". . . both parties have discussed the terms . . . implications and monetary considerations involved between themselves, [and] they desire to set forth their agreement in writing, without any duress . . . and they do fully and voluntarily enter into this Agreement. . . .

"1. FINANCIAL DISCLOSURE

"[Each of] the parties . . . has furnished the other with a copy of [his or her] 1996 Federal Income Tax Return . . . and . . . they have each had the opportunity to review same.

"[The defendant] has . . . filed . . . Corporate and Partnership Tax Returns for those items of separate property . . . which are deemed to be confidential due to the interest of . . . parties not in privity [with this] Agreement. Although [the plaintiff has requested them, she] has not been furnished with copies of such documents, and is executing this Agreement despite her lack of access to [them].

"In lieu of providing copies of such Corporate and Partnership Tax Returns, [the defendant] has [represented to the plaintiff] . . . the value of the businesses as set forth in Schedule 'A.' Similarly, [the plaintiff has represented to the defendant] the value of assets listed on Schedule 'B.' Both parties acknowledge that they are relying upon such representations . . . regarding the financial . . . circumstances of the other party, in executing this Agreement. . . .

"5. OWNERSHIP AND DIVISION OF PROPERTY

"In the event of a . . . judicial dissolution of the marriage, each party shall retain his or her separate property to his or her exclusive ownership and use. . . .

"7. INTENTION OF AGREEMENT

"This Agreement is solely intended to make provision for the ownership, division and distribution of marital and separate property. . . .

"10. PAYMENT UPON OPERATIVE EVENT

"If an operative event . . . occurs . . . [the defendant] shall pay to [the plaintiff] . . . in full . . . settlement of . . . all claims . . . that [the plaintiff] may have against [the defendant] for a distributive award for any contribution . . . of whatever kind . . . to the appreciation of separate property, including but not limited to: Essential Oils, Inc.; Flavormatic, Inc.; or R & R Realty or any subsidiary or derivative endeavor. . . .

"C. If an operative event first occurs after . . . the seventh anniversary . . . but not later than the twelfth anniversary . . . of the marriage, then as a property settlement [the defendant] shall pay [the plaintiff a] sum equal to twenty . . . percent of [his] adjusted gross income . . . .

" '[A]djusted gross income' shall be . . . the average of [the defendant's] adjusted gross annual income . . . for the five . . . years immediately preceding . . . the operative event, including the year of the operative event. . . .

"11. OPERATIVE EVENT, DEFINED

"[A]n operative event . . . shall mean . . . [c]ommencement of an action . . . by either party seeking a . . . dissolution of the marriage . . . .

"15. SUBSEQUENT PROCEEDINGS

"The parties agree that all . . . provisions of the Agreement shall be binding upon them upon the date of [their] marriage . . . [and] shall . . . be binding upon [them] and shall become a part of any subsequent agreement entered into between [them] . . . . The provisions of this Agreement shall . . . be *incorporated but not merged* in any judgment . . . of divorce . . . obtained by either party . . . [and] shall . . . survive the same . . . .

"19. SITUS

"*This Agreement shall be construed . . . in accordance with the laws of the State of New York. . . .*

"21. LEGAL REPRESENTATION

"The parties represent . . . that [they have been represented by counsel of their respective choice] . . . ." (Emphasis added.)

[5] The New York court upheld the validity of the prenuptial agreement, stating in its May 4, 2010 decision: "The plaintiff has failed to establish that

the represented value of the Flavormatic Companies was false at the time it was made; that the defendant knew the values to be false; and that the alleged misrepresentation of the value of the companies was made for the purpose of inducing the plaintiff to enter into the prenuptial agreement. Moreover, there is no showing that the plaintiff relied on the alleged misrepresentation or that she was injured as a result of the alleged misrepresentation. On the contrary, the plaintiff concedes that she knowingly waived any and all rights to the Flavormatic Companies. She testified unequivocally that she knew the defendant intended to keep these companies as separate property regardless of their values."

[6] Other pertinent provisions of the stipulation that underscore its contractual nature follow.

"ARTICLE XVI

"WAIVER OF EQUITABLE DISTRIBUTION

"1. The parties intend this Agreement to constitute an Agreement pursuant to [New York Domestic Relations Law] § 236 (B) (3). They intend this Agreement and its provisions to be in lieu of each of their respective rights pursuant to all aspects of [New York Domestic Relations Law] § 235 (B). Accordingly, except to the extent provided in this Agreement, the parties *mutually waive their rights and release each other from any claims for* maintenance, distribution of marital property, distributive awards, special relief or claims regarding *separate property or increase in the value thereof. . . .*

"ARTICLE XVII

"FULL DISCLOSURE

"Each party has had the opportunity to make independent inquiry into the complete financial circumstances of the other and is fully informed of the income, assets, property and financial prospects of the other. Each has had a full opportunity and has consulted at length with his or her attorney regarding all of the circumstances hereof, and acknowledges that this *Agreement has not been the result of any fraud,* duress or undue influence exercised by either party upon the other or any other person or persons upon the other. Both parties acknowledge that this Agreement has been achieved after competent legal representation and honest negotiations. . . .

"ARTICLE XXIII

"RECONCILIATION AND MATRIMONIAL DECREES

"1. This Agreement shall not be invalidated or otherwise affected by a reconciliation . . . and this Agreement shall not be invalidated or otherwise affected by any decree or judgment of separation or divorce made by any court in any action which may presently exists or may hereafter be instituted by either party against the other for a separation or divorce, and the *obligations and covenants of this Agreement shall survive any decree or judgment of separation or divorce and shall not merge therein, and this Agreement may be enforced independently of such decree or judgment. . . .*

"ARTICLE XXIV

"LEGAL INTERPRETATION

"All matters affecting the execution, interpretation, performance and enforcement of this Agreement and the rights of the parties hereto shall be governed by the laws of the State of New York. . . . Any actions or claims involving this Agreement . . . shall be governed by the Laws of the State of New York and the Supreme Court of the State of New York, Westchester County will retain jurisdiction . . . of all such issues, provided at least one party resides in Westchester County New York. . . . If both parties reside outside of New York State, any actions or claims involving this Agreement . . . *shall be brought in a court of competent jurisdiction, and with respect to any choice of laws, the Laws of the State of New York shall be applied and govern in all respects.*" (Emphasis added.)

[7] "The general rule is, that by a judgment . . . the contract or instrument upon which the proceeding is based becomes entirely merged in the judgment. By the judgment of the court, it loses all of its vitality and ceases to bind the parties to its execution. Its force and effect are then expended, and all remaining legal liability is transferred to the judgment or decree. Once becoming merged in the judgment, no further action at law or suit in equity can be maintained on the instrument." (Internal quotation marks omitted.) 30 R. Lord, Williston on Contracts (4th Ed. 2004) § 76:50, p. 237.

"However, the *parties may agree that certain contractual rights will survive the entry of a judgment. This is particularly likely in the case of separation agreements in divorce cases.* Thus, it has been said: 'If parties who are dissolving their marriage wish to retain contractual remedies as well as the remedies that are available under the dissolution judgment, then

they may do so by entering into an agreement and identifying which, if any, of the terms of their agreement they wish to have the court incorporate into the judgment, and which terms they wish to have survive as separate agreements.' " (Emphasis added.) Id., 239.

"Contract clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut. . . . The ordinary rule is that where a cause of action arising in another [s]tate is asserted in our courts, we look to the laws of that [s]tate to determine all matters of substance involved in it, but that matters of procedure are governed by our own law . . . ." (Citation omitted; internal quotation marks omitted.) *People's United Bank* v. *Kudej*, 134 Conn. App. 432, 438, 39 A.3d 1139 (2012); see also General Statutes § 46b-71 (b).

[8] The stipulation provided that following the sale of the marital home, the defendant was to pay the plaintiff base child support in the amount of $5000 per month. The judgment of dissolution states in relevant part: "Each party has a right to seek a modification of the child support order upon a showing of: (I) a substantial change in circumstances; or (II) that three years have passed since the order was entered, last modified or adjusted; or (III) there has been a change in either party's gross income by fifteen percent or more since the order was entered, last modified, or adjusted; however, if the parties have specifically opted out [of] subparagraph (II) or (III) of this paragraph in a validly executed agreement or stipulation, then that basis to seek modification does not apply."

[9] The court's application of New York Domestic Relations Law was in keeping with § 46b-71 (b), which provides in relevant part that, in modifying a foreign matrimonial dissolution judgment, the substantive law of the foreign jurisdiction shall be controlling.

[10] The court ordered the defendant to pay the plaintiff $10,190 per month in child support until the older of the parties' two children attained the age of twenty-one years. The modified support order was made retroactive, resulting in an arrearage of $145,320. The court ordered the defendant to pay the arrearage to the plaintiff in three installments. The court also awarded the plaintiff $50,000 in attorney's fees.

[11] It is perplexing why the plaintiff filed a motion to open the judgment of dissolution and requested a new dissolution trial because she remarried three days after divorcing the defendant. The parties agreed pursuant to the stipulation that the plaintiff may enforce the stipulation independently without disturbing the judgment of dissolution. As the trial court stated, the plaintiff was required to bring a plenary contract action, rather than attack the judgment of dissolution.

[12] In her motion to open, the plaintiff averred in part:

"2. Prior to their marriage, the parties entered into a prenuptial agreement [pursuant to which], plaintiff waived her interest in defendant's separate property, including his business interests. At the time, defendant was a 50 [percent] owner of Flavormatic Industries, Essential Oil Suppliers and R & R Realty, of which entities defendant's brother was his partner. Defendant's financial disclosure for purposes of the prenuptial agreement consisted of his 1996 personal income tax return reflecting $41,000 in wages and $11,157 in rental income, a schedule listing his business interests and the values of his bank and brokerage accounts . . . and a statement from his accountant of the fair market value of his business interests. Plaintiff specifically waived any further discovery in executing the prenuptial agreement. . . .

"4. Plaintiff commenced a divorce action on February 2, 2009. During the divorce proceedings, plaintiff unsuccessfully challenged the prenuptial agreement on the basis of defendant's fraud . . . and, as a result, the Court limited discovery and plaintiff was not permitted access to documents related to defendant's business interests . . . .

"5. The parties started a divorce trial on April 4, 2011 [but] *settled and executed a [stipulation] dated April 11, 2011, which was subsequently incorporated into the divorce judgment.*

"6. In connection with the trial, defendant had submitted to plaintiff and to the Court a sworn Statement of New Worth . . . dated April 1, 2011.

"7. On his [statement of net worth] under GROSS INCOME, defendant wrote '0.00.' Defendant then wrote 'See Attached 2010 income information' . . . [and] attached . . . documents relative to the prior year's income . . . .

"8. Defendant indicated total expenses on his [statement of net worth] of $12,096 per month . . . not including any support to be paid towards plaintiff and the parties' two children.

"9. On his [statement of net worth], defendant [listed his assets] . . . .

"10. . . . According to defendant at the time of the parties' divorce, other than the value of his business (which he stated was N/A), his other cash and retirement assets totaled $131,215 . . . which he claimed was his 'separate property' under the parties' prenuptial agreement except for [a] . . . brokerage account and the cash value of his life insurance policy.

"11. Based upon defendant's 'disclosures' on his sworn financial statement, relied upon by plaintiff, the parties entered into [a] settlement, which set forth that their [stipulation] superseded the Prenuptial Agreement:

"a. Child Support:

"- Defendant to pay child support to plaintiff in the amount of $5000 per month, based upon defendant's gross income of $265,000 in 2009 . . .

"- Defendant to pay 80 [percent] of statutory add-ons for the children; and

"- Defendant to pay 60 [percent] of college [costs] for the children with a [State University of New York] cap.

"b. Alimony: Plaintiff waived her right to alimony. . . .

"12. . . . [P]laintiff [received] cash assets from the marriage totaling $488,776 . . . .

"15. On November 21, 2014 . . . after domesticating the New York Judgment of Divorce in Connecticut, plaintiff filed a motion to modify . . . on the ground that under New York law, defendant's income had increased by at least [15] percent since the Judgment of Divorce resulting in a substantial change in circumstances requiring an upward modification . . . .

"18. It was only during the discovery process on the [motion to modify] did plaintiff begin to learn that defendant's April, 2011 statement of net worth . . . contained false statements and material omissions intended to mislead plaintiff and the Court, and misrepresent his actual income and the parties' marital assets. . . .

"20. Defendant lied on his [statement of net worth] about his available and true compensation as the owner of Flavormatic, listing his 2011 income as '0.00' and his 2010 income as $150,000, and then each year starting with the year of his divorce taking compensation ranging from $950,000 to $1,900,000 . . . .

"21. Defendant stockpiled money in his corporation in order to avoid equitable distribution of marital assets and to avoid paying alimony and child support . . . .

"25. Defendant hid the income [he earned] during the marriage, which would have resulted in significant nonbusiness assets subject to equitable distribution, stockpiling those sums in his businesses, because he knew that plaintiff would not have access to the information by virtue of the trial court upholding the enforceability of the prenuptial agreement. Defendant intentionally omitted this information on his [statement of net worth] for the purpose of fraudulently inducing plaintiff [to enter] into a [stipulation] which was egregiously inequitable. Defendant's misconduct was wilful, malicious and unlawful, as a result of which this Court should vacate the parties' April, 2011 [stipulation], open the divorce judgment and order a new trial.

"26. Had defendant been truthful on his [statement of net worth], there is a reasonable possibility that . . . the settlement would have been different [in that plaintiff would not have waived alimony, would not have agreed to $5000 per month in child support, would have demanded counsel fees, would not have agreed to limit the defendant's obligation to pay for the children's college expenses at the State University of New York cap, would not have agreed to pay 40 percent of the children's college expenses, would not have agreed to leave the marriage with less than $500,000, and would have demanded higher life insurance coverage for child support and for alimony]." (Emphasis altered; footnote omitted.)

[13] "Oneglia and its progeny are grounded in the principle of the finality of judgments." Brody v. Brody, 153 Conn. App. 625, 631, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014).

[14] In Oneglia, the plaintiff wife filed a motion to open the judgment of dissolution, claiming that the defendant husband fraudulently had misrepresented his finances with respect to the parties' separation agreement. Oneglia v. Oneglia, supra, 14 Conn. App. 268. The wife asked the court to open the judgment and to allow " 'complete discovery.' " Id. The trial court deferred a decision on the issue of discovery until it had conducted a hearing to determine whether the wife "possessed enough preliminary evidence on the question of fraud to justify a full-blown discovery process." Id. Following the hearing, the court found that the wife "had not put forth sufficient indicia of fraud to justify an opening of the judgment and further discovery." Id., 269. The wife appealed, claiming that she had a right to conduct discovery and to compel the husband to testify. Id. This court disagreed and affirmed

the judgment of the trial court, stating that the wife's premise was incorrect in that our rules of practice and statutes do not provide for postjudgment discovery. Id. The trial court's position was straightforward: "If the [wife] was able to substantiate her allegations of fraud *beyond mere suspicion*, then the court would open the judgment for the limited purposes of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held." (Emphasis added.) Id., 269–70.

[15] At the conclusion of the October 26, 2018 hearing, counsel for the defendant informed the court that the defendant wanted to address the court personally. The defendant then stated to the court that he wanted the proceedings to be expedited because he had been diagnosed with glioblastoma, a brain tumor. His desire was to resolve the litigation to put his affairs in order and to not burden his family and his estate.

[16] Counsel for the defendant also argued that the court should dismiss the motion to open because the plaintiff had failed to make out a prima facie case of fraud on the part of the defendant. Although the court found that the plaintiff failed to make out a prima facie case of fraud, it did not dismiss the motion to open on that basis.

[17] In *Oberstein*, the defendant wife sought by way of counterclaims to reform the parties' separation agreement at the time the plaintiff husband commenced an action for dissolution of marriage. *Oberstein* v. *Oberstein*, supra, 93 App. 2d 375. The court set forth the rule of law in that regard as follows: "It has been established law in this [s]tate that where there is an existing separation agreement, which controls the respective support obligations of the parties, in a subsequent matrimonial action for divorce neither alimony nor support is in issue unless and until the support terms of the separation agreement are set aside. On this basis, the courts have regularly denied any financial disclosure in such an action, as long as the support terms of the separation agreement remain in effect." Id., 376. "However, so much of defendant's notice to take plaintiff's oral deposition as requests information regarding his present financial condition is premature. Plaintiff's present financial circumstances are not relevant to the defendant's claim, inter alia, that she was deceived regarding the true extent of her husband's income at the time that the separation agreement was entered into and will not become an issue unless and until the separation agreement or its support provisions have been vacated or set aside on the grounds of fraud, duress or overreaching, etc." (Internal quotation marks omitted.) Id., 376–77, quoting *Potvin* v. *Potvin*, 92 App. Div. 2d 562, 563, 459 N.Y.S.2d 313 (1983).

"The equitable distribution statute . . . continued, in effect, the prior rule which directed compulsory financial disclosure where alimony, maintenance or support is in issue. . . . However, where, as here the support or maintenance obligations of the parties are fixed by an agreement, neither support nor maintenance is 'in issue' unless there is a real and legitimate presentation to vacate the support terms of the agreement on the basis of the criteria explicitly set forth in the statute. Thus, in such cases, it is necessary to review the factual predicate which has been set forth to ascertain whether, in fact, the underlying circumstances establish a proper basis to modify the agreement." *Oberstein* v. *Oberstein*, supra, 93 App. Div. 2d 379–80.

[18] In *Moore*, the New York trial court balanced the need to respect the finality of separation agreements with the need for accurate disclosure and permitted postjudgment discovery. *Moore* v. *Moore*, supra, 2015 WL 4530304, *5–8. *Moore* is factually and procedurally distinguishable from the present case. *Moore* concerned the *application* of a former husband seeking to subpoena financial records from his former spouse in order "to frame [a] complaint to challenge a two-year old separation agreement." Id., *1. The court stated that New York Civil Practice Law and Rules 3102 (c) "contains no preconditions to pre-complaint disclosure—[it] seems to obviate the need to have an already vacated separation agreement as a predicate to disclosure. Instead, as interpreted by the New York courts, [it] simply requires a party seeking such disclosure to articulate the elements of a cause of action." Id., *5. In balancing the need for accurate disclosure and the finality of separation agreements, the court noted that "[t]he parties expressly agreed that further disclosure to enforce the [a]greement would be permissible at any time either party had an obligation to the other." Id., *7. "In concluding that the sensitive balance of the intrusiveness of the requested discovery when weighed against the nature of the claim makes disclosure permissible, this court is not conducting any pre-screening of the merits of the husband's claim. Any such determination would await the filing of a complaint, an

answer and further proceedings." Id. The court further concluded that to the extent the husband wished to "invalidate the agreement incorporated [but] not merged into a judgment of divorce, he must do so by a plenary action." Id., *8.

In the present case, the stipulation contained no provision for further disclosure to enforce or to vacate it. Furthermore, the plaintiff's motion to open is not the equivalent of a New York Civil Practice Law and Rules 3102 (c) application for preaction discovery, which can be pursued in Connecticut through an equitable bill of discovery. See Practice Book § 13-18. Finally, the plaintiff's motion to open seeks to avoid the plenary action to challenge the stipulation that the court in *Moore* said was the complaining party's sole method to challenge the separation agreement. Under the procedural posture of this case, if the court had permitted discovery, the plaintiff would not have been required to commence such an action in which to allege fraud.

[19] The court also set forth in detail its legal analysis, including eight specific factual findings. Because we conclude that the trial court properly determined that, pursuant to New York substantive law, the plaintiff was required to bring a plenary action to challenge the stipulation, we need not address her remaining claims. See footnote 1 of this opinion.

[20] It appears that the court may have used the terms "deny" and "dismiss" interchangeably. The order the court issued on January 31, 2019, stated that the "matter shall be set down for argument as to show cause as to why the plaintiff's motion to open . . . should not be *denied* consistent with New York law." (Emphasis added.) At the commencement of the hearing on March 19, 2019, the court stated: "I think that since the matter started with a hearing with regard to postjudgment discovery and was not per se a hearing on the merits, I believe that the appropriate cause of action is to dismiss and to the extent that my memorandum, although I think in two places one place I think I said deny/dismiss and just—I type my own decisions so—but in any event that's the appropriate remedy because it's jurisdictional and jurisdiction is always in this particular instance because it implicates the subject matter, you can raise it at any time and even by the court and that's Practice Book [§] 10-33 is a motion to dismiss . . . ."

[21] On appeal, the defendant argues that the stipulation exists independently of the dissolution judgment and governs the parties' marital rights. We agree that the stipulation is independent of the dissolution judgment.

[22] "Contract clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut. . . . The ordinary rule is that where a cause of action arising in another [s]tate is asserted in our courts, we look to the laws of that [s]tate to determine all matters of substance involved in it, but that matters of procedure are governed by our own law . . . ." (Citation omitted; internal quotation marks omitted.) *People's United Bank* v. *Kudej*, 134 Conn. App. 432, 438, 39 A.3d 1139 (2012).

[23] In her brief on appeal, the plaintiff argued that failure to commence a plenary action for reformation or rescission of a stipulation is not a fatal defect in New York. She cited the following cases to support her position: *MacDonald* v. *Guttman*, 72 App. Div. 3d 1452, 1455–56, 900 N.Y.S.2d 177 (2010) (malpractice action; stipulated agreement is independent contract obligation modifiable by plenary action; under certain circumstances court may reform agreement to conform to parties' intent); *Banker* v. *Banker*, 56 App. Div. 3d 1105, 1107, 870 N.Y.S.2d 481 (2008) (court did not exceed authority by reforming stipulation where there was mutual mistake, rendering portion of stipulation impossible or impracticable to carry out); *Brender* v. *Brender*, 199 App. Div. 2d 665, 666, 605 N.Y.S.2d 411 (1993) (relevant stipulation provision set aside where there was mutual mistake regarding insurance availability); *Gaines* v. *Gaines*, 188 App. Div. 2d 1048, 592 N.Y.S.2d 204 (1992) (postdissolution modification of agreement requires plenary action but modification on motion affirmed because it was granted after full hearing tantamount to plenary trial). In the present case there is no claim of mutual mistake, technical defect or agreement of the parties to proceed on a motion to modify or open the judgment.

The defendant, however, has pointed out that the New York cases cited by the plaintiff are distinguishable from the present case because the motions at issue were grounded in mistake, omission, defect, irregularity or a technical defect. The defendant argues that those cases teach that where the issue is not in dispute, e.g., inability to subdivide real property, no health insurance available, or that securities should have been included in equitable distribution, and both parties request that the court correct a mistake in the agreement, the Appellate Division of the New York Supreme Court will not reverse

the trial court's judgment. Where the issue is in dispute, however, the issue must be bought pursuant to a plenary action to reform or to vacate the agreement. See New York Civil Practice Law and Rules 2001, which provides: "At any stage of an action, including the filing of a summons with notice, summons and complaint or petition to commence an action, the court may permit a mistake, omission, defect or irregularity, including the failure to purchase or acquire an index number or other mistake in the filing process, to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded, provided than any applicable fees shall be paid." We agree with the defendant that the cases are distinguishable from the facts of the present case in which there is no mutual mistake, impossibility, or impracticality.

[24] Pursuant to New York Civil Practice Law and Rules 5015, New York trial courts may relieve a party from the terms of a judgment on the grounds of fraud or misrepresentation.

[25] In *Moore*, the court relied on New York Civil Practice Law and Rules 3102 (c) to conclude that the plaintiff was entitled to preaction discovery. *Moore* v. *Moore*, supra, 2015 WL 4530304, *8. New York Civil Practice Law and Rules 3102 (c), which applies to all civil matters, provides: "Before action commenced. Before an action is commenced, disclosure to aid in bringing an action, to preserve information or to aid in arbitration, may be obtained, but only by court order. The court may appoint a referee to take testimony." In Connecticut, preaction discovery may be obtained by means of an equitable bill of discovery. See *Berger* v. *Cuomo*, 230 Conn. 1, 5–6, 644 A.2d 333 (1994). The plaintiff in the present case has not pursued an equitable bill of discovery.

---