******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ELANA GERSHON *v.* RONALD BACK
## (SC 20599)

McDonald, D'Auria, Mullins, Ecker and Alexander, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved by a New York court, appealed to the Appellate Court from the judgment of the trial court, which dismissed her motion to open and set aside the final New York judgment of divorce for lack of subject matter jurisdiction. Before their marriage, the parties entered into a prenuptial agreement, pursuant to which the plaintiff waived her interest in certain of the defendant's business interests. During the divorce proceedings, the plaintiff challenged the enforceability of the prenuptial agreement, but the New York court rejected the claim, finding no evidence of fraud or overreaching by the defendant. The parties eventually settled their dispute by way of a separation agreement, which superseded the prenuptial agreement and resolved the parties' respective financial and property rights. The separation agreement also included a choice of law provision, which designated New York law as governing the agreement, and a provision incorporating New York's plenary action rule, which requires a party seeking to modify or vacate a separation agreement that survives a final judgment of divorce to file a plenary action on the contract instead of a motion to open, modify or vacate the divorce judgment. The final judgment of divorce incorporated the separation agreement by reference but provided that the separation agreement would survive and not be merged into the judgment. The parties both later moved to Connecticut, where the plaintiff registered the New York divorce judgment pursuant to statute (§ 46b-71 (a)). Thereafter, the plaintiff moved to open and set aside the divorce judgment in the Superior Court, claiming that it was obtained through the defendant's fraudulent conduct. The plaintiff requested that the Connecticut court open the New York divorce judgment and vacate the settlement agreement. Applying New York law, the trial court concluded that, because the separation agreement was incorporated but not merged into the divorce judgment, the plaintiff could not challenge the enforceability of the agreement by way of a motion but, rather, was required to do so by commencing a plenary action. The trial court then dismissed the plaintiff's motion for lack of subject matter jurisdiction and rendered judgment for the defendant. The Appellate Court agreed with the trial court that New York's plenary action rule was substantive for choice of law purposes but disagreed with the trial court's conclusion that the trial court lacked subject matter jurisdiction, relying on, among other things, the jurisdiction conferred by § 46b-71 (b). Accordingly, the Appellate Court concluded that the trial court should have denied, rather than dismissed, the plaintiff's motion to open and set aside the divorce judgment. On the granting of certification, the plaintiff appealed to this court from the Appellate Court's judgment.

*Held* that the Appellate Court correctly concluded that the New York plenary action rule is substantive, and not procedural, for choice of law purposes and that the trial court should have denied, rather than dismissed, the plaintiff's motion to open and set aside the divorce judgment:

Under the conflict of law rules governing foreign matrimonial judgments registered in Connecticut, as codified in § 46b-71 (b), the plaintiff's motion to open and set aside the divorce judgment was governed by New York substantive law and Connecticut procedural law, and that approach was consistent with the well established principle that, in a choice of law situation, the forum state will apply its own rules to issues of procedure and matters of judicial administration, even if the substantive law of another jurisdiction applies, because it would often be disruptive or difficult to apply the local rules of another state.

Although New York's plenary action rule, which is principally concerned with preserving the parties' vested contractual rights to enforce the separation agreement in a separate civil action, fell into a gray area

between issues relating primarily to judicial administration and those concerned primarily with the rights and liabilities of the parties, this court concluded that the plenary action rule was so interwoven with the plaintiff's cause of action as to be deemed substantive for choice of law purposes.

The fact that the parties explicitly incorporated the New York plenary action rule into the separation agreement, which provided that their contractual rights could not be invalidated or otherwise affected by any final judgment of divorce, was a weighty reason for applying that law rather than the local law of the forum, insofar as it demonstrated that the issue was one to which the parties had likely given thought.

Moreover, the application of the New York plenary action rule would affect the ultimate substantive outcome of the case because the parties had contractual rights that could not be undone by modifying the divorce judgment, there was, to this court's knowledge, no settled precedent classifying the plenary action rule as procedural or substantive for choice of law purposes, and the application of that rule would not impose an undue burden on Connecticut courts, which have recognized that separation agreements are contracts that may be litigated independently of a divorce judgment in a civil action sounding in contract.

Argued October 13, 2022—officially released February 21, 2023

*Procedural History*

Motion by the plaintiff to open a foreign judgment of dissolution, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Michael E. Shay*, judge trial referee, dismissed the plaintiff's motion, and the plaintiff appealed to the Appellate Court, *Lavine, Bright* and *Beach, Js.*, which reversed the judgment of the trial court and remanded the case with direction to deny the motion, from which the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*James P. Sexton*, with whom were *Julia K. Conlin* and, on the brief, *John R. Weikart*, for the appellant (plaintiff).

*Kenneth J. Bartschi*, with whom were *Karen L. Dowd* and, on the brief, *Wesley W. Horton* and *Joseph T. O'Connor*, for the appellees (defendants).

*Opinion*

ECKER, J. New York's so-called "plenary action rule" requires a party seeking to modify or vacate a separation agreement that survives a final judgment of divorce to file a plenary action on the contract instead of a motion to open, modify or vacate the divorce judgment. This certified appeal requires us to determine whether New York's plenary action rule is procedural or substantive for choice of law purposes. The trial court concluded that the rule was substantive and dismissed for lack of subject matter jurisdiction the motion, filed by the plaintiff, Elana Gerson, to open and set aside the final judgment of divorce. The Appellate Court agreed that the New York rule was substantive but disagreed that the trial court lacked subject matter jurisdiction and, therefore, concluded that the plaintiff's motion should have been denied instead of dismissed. *Gershon* v. *Back*, 201 Conn. App. 225, 253–54, 242 A.3d 481 (2020). We affirm the judgment of the Appellate Court.

This case has a long and contentious history. The plaintiff and the defendant, Ronald Back,[1] were married on August 16, 1997. Prior to their marriage, the parties entered into a prenuptial agreement, pursuant to which the plaintiff waived her interest in the defendant's separate property, including his business interest in Flavormatic Industries (Flavormatic). During their marriage, the parties resided in New York and had two children. In February, 2009, the parties separated, and the plaintiff commenced a divorce action in the New York Supreme Court (New York court). The plaintiff challenged the enforceability of the prenuptial agreement, but the New York court rejected the plaintiff's claim, finding that she "had presented no evidence establishing that the prenuptial agreement was procured by the defendant's fraud or overreaching." (Emphasis omitted; internal quotation marks omitted.)

In April, 2011, during their divorce trial, the parties settled their dispute by entering into a "[s]tipulation of [s]ettlement and [a]greement" (separation agreement), which superseded the prenuptial agreement and resolved the parties' "respective financial and property rights, support, and all other respective rights, remedies, privileges and obligations to each other, arising out of the marriage . . . ." Pursuant to the separation agreement, the parties agreed to keep their own separate property and the income and appreciation thereof "free from any claim whatsoever from the other party." Additionally, the parties agreed to waive their respective rights to each other's retirement accounts and to divide the proceeds of the sale of the marital residence. The defendant also agreed to pay the plaintiff $400,000 "[a]s further equitable distribution of the parties' assets . . . ." The separation agreement contains a choice of law provision, which provides that "[a]ll matters affecting the execution, interpretation, performance and enforce-

ment of this [a]greement and the rights of the parties hereto shall be governed by the laws of the [s]tate of New York."

The separation agreement incorporates New York's plenary action rule by explicitly providing that it "shall not be invalidated or otherwise affected by any decree or judgment of separation or divorce made by any court in any action [that] may presently exist or may hereafter be instituted by either party against the other for a separation or divorce, and the obligations and covenants of this [a]greement shall survive any decree or judgment of separation or divorce and shall not merge therein, and this [a]greement may be enforced independently of such decree or judgment." The separation agreement also states that "[b]oth parties agree, stipulate and consent that no judgment, order or decree in any action for divorce or separation, whether brought in the [s]tate of New York, or in any other state or country having jurisdiction [over] the parties hereto, shall make any provisions for alimony or child support or affect the property rights of either party in a manner inconsistent with the provisions of this [a]greement, but if any provision is made in any judgment, order or decree which is inconsistent with the provisions of this [a]greement, or imposes a different or greater obligation on either of the parties hereto than provided in this [a]greement, the provisions of this [a]greement shall take precedence and shall be the primary obligation of both of the parties hereto. It is further agreed that upon the trial of any action [that] may hereafter be instituted by either of the parties against the other for an absolute divorce in any court of competent jurisdiction, the party instituting such action shall read the provisions of this [a]greement relating to maintenance and support into the record of such action as a stipulation between the parties as to the questions of maintenance and support. Such party shall further request that the decree shall contain a provision specifically reciting, in words or substance, 'said [a]greement is not merged in, but survives this decree, and the parties thereof are hereby ordered to comply with it on its terms at all times and places.' "

On May 11, 2011, the New York court dissolved the parties' marriage in a final judgment of divorce, which incorporated the separation agreement by reference but provided that the separation agreement "shall survive and shall not be merged in this judgment . . . ." The judgment of divorce further stated that "jurisdiction over all matters affecting the execution, interpretation, performance and enforcement of this judgment [and/or] the [separation agreement] . . . shall be as specifically provided by the parties' [separation agreement]."

The plaintiff remarried three days later and moved to Greenwich with her new husband and the parties' children. The defendant later remarried and moved to Connecticut, as well. On October 27, 2014, the plaintiff

registered the final judgment of divorce in the Superior Court in the judicial district of Stamford-Norwalk pursuant to General Statutes § 46b-71.[2]

Extensive litigation in the Superior Court followed. In November, 2014, the plaintiff moved to modify the judgment to increase the defendant's child support obligations, arguing that "there has been a substantial change in circumstances since the date of judgment in that three years have passed since the order was entered . . . and the defendant's income has increased by at least [15] percent . . . ."[3] In connection with this motion, the plaintiff obtained discovery regarding the defendant's finances for the three years preceding the filing of the motion. Following full disclosure of the parties' respective finances, the trial court granted the plaintiff's motion, increased the defendant's child support obligation, and awarded the plaintiff attorney's fees.

After the trial court's order issued, there was a flurry of further litigation, including motions for reargument filed by both parties, the defendant's motion to offset his child support obligation with a credit for college room and board expenses, and the plaintiff's motions for contempt due to the defendant's failure to pay the retroactive amount of his increased child support obligation and the plaintiff's attorney's fees. The trial court denied the motions for reargument, granted the defendant's motion for a credit, and denied the plaintiff's motions for contempt.

The plaintiff then filed a motion to open and set aside the divorce judgment, which is the operative motion at issue in this appeal. In her motion, the plaintiff claimed that she had learned during the modification proceeding that the divorce judgment "was obtained through the fraudulent conduct of the defendant" in that he "made material misrepresentations of fact to the court and to the plaintiff in his sworn financial statement provided at the time of the settlement." Specifically, referring to the defendant's "[a]ttached 2010 [i]ncome [i]nformation," the plaintiff alleged that the defendant's sworn statement of net worth dated April 1, 2011, listed his gross income for the year 2011 as "0.00," even though his W-2 form reported wages from Flavormatic in the amount of $1,900,000 in 2011.[4] (Emphasis omitted; internal quotation marks omitted.) The plaintiff further alleged that the defendant "stockpiled money in his corporation in order to avoid equitable distribution of marital assets and to avoid paying alimony and child support." (Emphasis omitted.) According to the plaintiff, "there is a reasonable probability that the result of the settlement would have been different had the defendant not made material misrepresentations of fact . . . ." The plaintiff's motion asked the court to open the final judgment of divorce, to vacate the settlement agreement, to order a new trial, and to award the plaintiff attorney's fees.

In an accompanying memorandum of law, the plaintiff requested postjudgment discovery, arguing that she had met her burden under *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 540 A.2d 713 (1988), of demonstrating sufficient indicia of fraud to justify opening the judgment and conducting further discovery. See id., 270 (plaintiff was permitted to conduct postjudgment discovery if she "was able to substantiate her allegations of fraud beyond mere suspicion").

The defendant opposed the plaintiff's motion to open, arguing that the plaintiff had failed to state a claim for fraud or misrepresentation under New York law because the defendant's 2011 statement of net worth was not inaccurate. The defendant explained that his "income for 2011 could not be listed in March of 2011, [because] over 75 percent of the year remained," and, instead, "[a]s properly and plainly stated in the statement of net worth, [the defendant] listed his total income for 2010 [because] that was the last full year of income avail able." (Emphasis omitted.) The defendant further claimed that (1) the plaintiff was collaterally estopped from litigating the issue of the defendant's net worth because she "was provided with substantial discovery regarding [the defendant's] businesses during the divorce action" and previously had claimed in that action, prior to its settlement, that the defendant was stockpiling income in Flavormatic, (2) the plaintiff ratified the separation agreement by accepting the benefits of the agreement for more than seven years, and (3) the plaintiff's motion was untimely under the New York statute of limitations governing claims of fraud.

The trial court conducted a three day evidentiary hearing pursuant to *Oneglia* to determine whether the plaintiff could substantiate her allegations of fraud to a sufficient degree to allow postjudgment discovery. At the hearing, the trial court heard testimony from the defendant, the plaintiff, and the plaintiff's expert witness in forensic accounting, who testified regarding the defendant's income and retained earnings in Flavormatic for the year 2011.

Following the hearing, the trial court issued a memorandum of decision, denying the plaintiff's request for postjudgment discovery. The trial court concluded that the choice of law provision in the separation agreement "was arrived at without any fraud or duress, and with the advice of counsel, [that] it should be given effect," and, therefore, that New York law "relating to postjudgment discovery in matrimonial cases . . . should ultimately control and not *Oneglia* . . . ." The court observed that, in New York, postjudgment discovery is not permitted unless there is "an affirmative, factual showing, at least prima facie, that the agreement was unfair or unreasonable when executed or unconscionable at the time of the [rendering] of final judgment." (Emphasis omitted; internal quotation marks omitted.)

Applying this standard, the court concluded that the plaintiff had "failed to meet her burden, with at least a prima facie showing, either that the [separation agreement] was unfair or unreasonable when negotiated, or unconscionable when the [divorce] judgment was [rendered], or that the defendant's actions amounted to wilful fraud or fraudulent concealment. Moreover, she has not established that, even if the judgment were to be opened and the [separation agreement] were to be set aside . . . that the resulting judgment would likely be substantially different," reasoning that (1) the New York court had sustained the validity of the parties' prenuptial agreement, finding no evidence of fraud or overreaching, (2) under the prenuptial agreement, the " 'operative event' " for purposes of the division of marital property was the filing of the complaint for divorce in February, 2009, and, therefore, "the relevant income [was] not the defendant's income for 2011 but, rather, that of the years 2004 through 2008," (3) the large increase in the defendant's income following the rendering of the final judgment of divorce in 2011 was not the product of "fraud or fraudulent intent on the part of the defendant" but plausible business decisions, and (4) "the plaintiff has accepted the benefit of the agreement for more than three years and, by so doing, 'effectively ratified' it, and she should be estopped from challenging it on the basis of fraud."

Having determined that the plaintiff was not entitled to postjudgment discovery, the trial court addressed New York law regarding the finality of judgments "in family relations matters, [when] the judgment is based [on] an agreement of the parties." The trial court considered it critically important that the separation agreement was incorporated but not merged into the final judgment of divorce, pointing out that, in New York, "[i]t is well settled that a party to a stipulation that is incorporated but not merged into a judgment of divorce cannot challenge the enforceability of the stipulation by way of a motion but, rather, must do so by commencement of a plenary action." The trial court ordered the parties to show cause why the plaintiff's motion to open and set aside the judgment "should not be denied consistent with New York law."

The trial court entertained oral argument on its order to show cause, after which it dismissed the plaintiff's motion for lack of subject matter jurisdiction. The court explained that, under New York law, a final judgment of divorce "cannot [be] attack[ed] . . . based on a motion to open. It must be done by a plenary action, a contract action . . . ." Accordingly, the court rendered judgment in favor of the defendant.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, claiming, among other things, that the trial court improperly had applied "New York procedural rules, rather than Connecticut proce-

dural rules, when it dismissed [her] motion."[5] *Gershon* v. *Back*, supra, 201 Conn. App. 227. The Appellate Court disagreed, holding that "the New York rule requiring a plenary action to challenge the terms of a settlement agreement, incorporated but not merged into the judgment of dissolution, is substantive [for choice of law purposes]." Id., 249. The Appellate Court reasoned that, under New York law, "[a] stipulation of settlement not merged into the judgment is independently binding on the parties, and New York courts may not impair the parties' contractual rights under the agreement by modifying the divorce judgment." Id., 251. Because New York's plenary action rule "affects the very existence of the cause of action," the Appellate Court concluded that it was "substantive and not procedural." Id., 253.

Although the Appellate Court agreed "with the [trial] court's conclusion that, under New York substantive law, the plaintiff was required to bring a plenary action"; id.; it disagreed "with the [trial] court's conclusion that it lacked subject matter jurisdiction." Id., 254. The Appellate Court observed that the trial "court had jurisdiction to consider the motion to open pursuant to [General Statutes] §§ 46b-1 and 46b-71 (b)" and, therefore, concluded that the trial court "should have denied, rather than dismissed, the motion to open." Id. We subsequently granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly determine that a New York law is substantive rather than procedural for choice of law purposes when that law would require a litigant in the parties' circumstances who is seeking to obtain postjudgment relief in a marital dissolution case to file a plenary action rather than a motion to open the dissolution judgment?" *Gershon* v. *Back*, 337 Conn. 901, 901–902, 252 A.3d 364 (2021).

On appeal to this court, the plaintiff claims that New York's plenary action rule is procedural for choice of law purposes and, therefore, inapplicable to this Connecticut action because it merely designates the means by which to vindicate her common-law contractual rights. The defendant responds that New York's plenary action rule is substantive because the parties' common-law contractual rights under the separation agreement are independent of the divorce judgment, and an order opening, modifying, or vacating the divorce judgment cannot affect those rights.[6] For the reasons that follow, we agree with the defendant.

"It is well settled that [c]hoice of law questions are subject to de novo review." (Internal quotation marks omitted.) *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 599, 211 A.3d 976 (2019). To determine whether New York or Connecticut law governs a motion to open and vacate a New York judgment of divorce registered pursuant to § 46b-71, we apply Connecticut's conflict of law rules. See id. Subsection (b) of § 46b-71 codifies

the conflict of law rules governing a foreign matrimonial judgment registered in this state and provides in relevant part that such a judgment "shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling." The plaintiff's motion to open and set aside the judgment is governed by New York substantive law and Connecticut procedural law.

This approach is consistent with the Restatement (Second) of Conflict of Laws and the well established principle that, "in a choice of law situation the forum state will apply its own procedure . . . ." (Internal quotation marks omitted.) *Reclaimant Corp.* v. *Deutsch*, supra, 332 Conn. 603. As we explained in *Reclaimant Corp.*, under § 122 of the Restatement (Second), " '[t]he forum has compelling reasons for applying its own rules' to procedural issues, even if the substantive law of another jurisdiction applies, because, 'in matters of judicial administration, it would often be disruptive or difficult . . . to apply the local rules of another state. The difficulties involved in doing so would not be repaid by a furtherance of the values that the application of another state's local law is designed to promote.' " Id., 604, quoting 1 Restatement (Second), Conflict of Laws § 122, comment (a), p. 350 (1971).

The line between substance and procedure is not always easily drawn. "[Although] there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights [whereas] a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *Weber* v. *U.S. Sterling Securities, Inc.*, 282 Conn. 722, 739, 924 A.2d 816 (2007). Although procedural rules generally "relate to the remedy as distinguished from the right," we have recognized that some rules are "so interwoven with . . . the cause of action as to become one of the congeries of elements necessary to establish the right . . . ." (Internal quotation marks omitted.) *Reclaimant Corp.* v. *Deutsch*, supra, 332 Conn. 604–605; see *Thomas Iron Co.* v. *Ensign-Bickford Co.*, 131 Conn. 665, 669, 42 A.2d 145 (1945) (foreign law is substantive when "the foreign remedy is so inseparable from the cause of action that it must be enforced to preserve the integrity and character of the cause [of action]" (internal quotation marks omitted)). Section 122 of the Restatement (Second) eschews "unthinking adherence" to formal labels such as " 'procedural' " and " 'substantive,' " and, instead, suggests that courts "face directly the

question whether the forum's rule should be applied." 1 Restatement (Second), supra, § 122, comment (b), p. 352. To determine whether the forum's rule should be applied to rules that "fall into a gray area between issues relating primarily to judicial administration and those concerned primarily with the rights and liabilities of the parties," § 122 instructs courts to consider the following factors: (1) "whether the issue is one to which the parties are likely to have given thought in the course of entering into the transaction"; (2) "whether the issue is one [the] resolution [of which] would be likely to affect the ultimate result of the case"; (3) "whether the precedents have tended consistently to classify the issue as 'procedural' or 'substantive' for [choice of law] purposes"; and (4) "whether an effort to apply the rules of the judicial administration of another state would impose an undue burden [on] the forum." Id., comment (a), pp. 351–52.

With these principles in mind, we turn to New York's plenary action rule and the principles on which it is based. Unlike Connecticut courts, New York courts do not review the provisions of a separation agreement to ensure that the agreement is fair and equitable to the parties prior to rendering a final judgment of divorce. Compare N.Y. Dom. Rel. Law § 236 (3) (McKinney Cum. Supp. 2021) ("[a]n agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded"), with General Statutes § 46b-66 (a) (court presented with separation agreement "shall inquire into the financial resources and actual needs of the parties . . . in order to determine whether the agreement of the parties is fair and equitable under all the circumstances"). Whereas, in Connecticut, separation agreements typically are merged into the final judgment of divorce after they have been approved by the court, in New York, separation agreements typically are not merged but, instead, survive the judgment.

One reason why separation agreements typically are not merged into the final judgment of divorce in New York is to avoid placing the imprimatur of the court on the agreement and "misleading spouses into believing [that] such [agreements have been determined] to be valid . . . ." (Citation omitted.) *Jaslow* v. *Jaslow*, 75 App. Div. 2d 876, 878, 427 N.Y.S.2d 292 (1980). The principal reason for this practice, however, is to preserve the contractual rights of the parties to enforce the separation agreement in a separate civil action. An unmerged "separation agreement continues in effect as a separate and independent contractual arrangement between the parties . . . . Thus, a change in the divorce decree cannot modify the separation agreement absent a clear expression by the parties of such an intent." (Citations omitted.) *Kleila* v. *Kleila*, 50 N.Y.2d 277, 283,

406 N.E.2d 753, 428 N.Y.S.2d 896 (1980). The unmerged separation agreement "survives as a separate contract to which the parties are bound. Consequently, [although] a judgment of divorce can be attacked [by a postjudgment motion], the separation agreement will remain unimpeached unless challenged in a plenary action . . . ." (Citation omitted.) *Lambert* v. *Lambert*, 142 App. Div. 2d 557, 558, 530 N.Y.S.2d 223 (1988); see *Fine* v. *Fine*, 191 App. Div. 2d 410, 411, 594 N.Y.S.2d 309 (1993) ("The stipulation of settlement is an independent contract binding on the parties . . . and the court may not impair the plaintiff's contractual rights under the agreement by modifying the divorce judgment . . . . The proper manner for the defendant to challenge the terms of the stipulation of settlement is in a plenary action . . . ." (Citations omitted.)). In a plenary contract action, the separation agreement is "subject to principles of contract construction and interpretation"; (internal quotation marks omitted) *In re Blonder* v. *Blonder*, 171 App. Div. 3d 1043, 1045, 98 N.Y.S.3d 329 (2019); instead of the principles governing divorce actions. See N.Y. Dom. Rel. Law § 236 (3) (McKinney Cum. Supp. 2021); see also *Fine* v. *Fine*, 26 App. Div. 3d 406, 407, 810 N.Y.S.2d 211 (2006) ("[a] plenary action to vacate a stipulation of settlement on the basis of fraud . . . is not a matrimonial action" under New York Domestic Relations Law). Stated simply, the parties to an unmerged separation agreement have "vested contractual rights" that generally cannot be disturbed by a postjudgment motion in a divorce action.[7] *Kleila* v. *Kleila*, supra, 284.

The plenary action rule is predicated, at least in significant part, on New York's strong public interest in the finality of judgments; see, e.g., *Teitelbaum Holdings, Ltd.* v. *Gold*, 48 N.Y.2d 51, 55–56, 396 N.E.2d 1029, 421 N.Y.S.2d 556 (1979); and in encouraging parties to resolve their own interests through contractual arrangements. See, e.g., *Bloomfield* v. *Bloomfield*, 97 N.Y.2d 188, 193, 764 N.E.2d 950, 738 N.Y.S.2d 650 (2001) ("there is a strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" (internal quotation marks omitted)); *Christian* v. *Christian*, 42 N.Y.2d 63, 71–72, 365 N.E.2d 849, 396 N.Y.S.2d 817 (1977) ("Generally, separation agreements [that] are regular on their face are binding on the parties, unless and until they are put aside . . . . Judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties [to settle] their own differences in connection with the negotiation of property settlement provisions." (Citations omitted.)); *Galusha* v. *Galusha*, 116 N.Y. 635, 645–46, 22 N.E. 1114 (1889) ("the separation agreement was not affected by the decree granting an absolute divorce," in part because "[t]he law looks favorably [on] and encourages settlements made outside of [the] courts between parties to a controversy"). As the New York

Court of Appeals has observed, "[t]o rewrite a judgment of divorce [that] has been relied on by both parties . . . would defeat the [parties'] reasonable expectation that the judgment was valid as [rendered], and would subvert the policy of upholding settled domestic relations that underlies the doctrine of equitable estoppel in divorce cases . . . ." (Citations omitted.) *Rainbow* v. *Swisher*, 72 N.Y.2d 106, 110–111, 527 N.E.2d 258, 531 N.Y.S.2d 775 (1988). Because "the provisions of a divorce judgment are considered final and binding on the parties . . . absent unusual circumstances or explicit statutory authorization"; (internal quotation marks omitted) *Sass* v. *Sass*, 276 App. Div. 2d 42, 46, 716 N.Y.S.2d 686 (2000); see footnote 7 of this opinion; an unmerged separation agreement cannot be rescinded, vacated, or set aside by a postjudgment motion in a divorce action.

Application of the four factors enumerated in comment (a) to § 122 of the Restatement (Second) leads us to conclude that New York's plenary action rule is so interwoven with the plaintiff's cause of action as to be deemed substantive. To begin, the unequivocal language employed by the parties in their separation agreement adopted in plain and forceful terms the very essence of New York's plenary action rule. In addition to the choice of law provision's adoption of New York law for "[a]ll matters affecting the execution, interpretation, performance and enforcement of [the separation] [a]greement and the rights of the parties hereto," the separation agreement expressly provides that it "*shall not be invalidated or otherwise affected by any decree or judgment of separation or divorce made by any court in any action which may presently exist or may hereafter be instituted by either party against the other for a separation or divorce*," and adds—if that were not clear enough—that "the obligations and covenants of this [a]greement *shall survive any decree or judgment of separation or divorce and shall not merge therein, and this [a]greement may be enforced independently of such decree or judgment*." (Emphasis added.) The separation agreement further provides that "*no judgment, order or decree in any action for divorce* or separation, whether brought in the [s]tate of New York, or in any other state or country having jurisdiction [over] the parties hereto, *shall make any provisions for alimony or child support or affect the property rights of either party in a manner inconsistent with the provisions of this [a]greement . . . .*" (Emphasis added.)

The fact that the parties explicitly incorporated New York's plenary action rule into their separation agreement by providing that their contractual rights could not be invalidated or affected by any final judgment of divorce "is a weighty reason for applying that law rather than the local law of the forum . . . ." 1 Restatement (Second), supra, § 122, comment (a), p. 351; see *Boyd*

*Rosene & Associates, Inc.* v. *Kansas Municipal Gas Agency*, 174 F.3d 1115, 1126 (10th Cir. 1999) ("[b]ecause parties are empowered to make contractual [choice of law] provisions, their expectations about the applicability of those [choice of law] provisions are a significant factor in the determination of whether an issue is substantive or procedural for [choice of law] purposes").

The remaining Restatement (Second) factors also weigh in favor of our conclusion that New York's plenary action rule is substantive under these circumstances. Application of New York's plenary action rule will affect the ultimate substantive outcome of this case because, as the Appellate Court correctly determined, the parties "have contractual rights that . . . cannot be undone by modifying the judgment of dissolution." *Gershon* v. *Back*, supra, 201 Conn. App. 251–52; see, e.g., *Goldman* v. *Goldman*, 282 N.Y. 296, 305, 26 N.E.2d 265 (1940) (modification of divorce judgment "[did] not relieve the defendant of any contractual obligation" under separation agreement, and "the plaintiff [could] still resort to the usual remedies for breach of a contractual obligation"). Additionally, to our knowledge, there is no settled precedent classifying New York's plenary action rule as procedural or substantive for choice of law purposes; the parties, at least, have not brought any such precedent to our attention, and we have found nothing of assistance in this regard. Nor will the application of the rule impose an undue burden on the courts of this state. Indeed, Connecticut courts have recognized that separation agreements are contracts that may be litigated independently of the divorce judgment in a civil contract action. See, e.g., *Friedlander* v. *Friedlander*, 5 Conn. App. 1, 4, 496 A.2d 964 ("a separation agreement is enforceable in a civil suit on the contract"), cert. denied, 197 Conn. 812, 499 A.2d 58 (1985); *Freeman* v. *Freeman*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-6001789-S (April 6, 2010) (49 Conn. L. Rptr. 578, 580) ("multiple Superior Court judges have determined that it is appropriate to litigate a breach of a separation agreement in a civil action for breach of contract" (internal quotation marks omitted)); *Lord* v. *Lord*, Superior Court, judicial district of Fairfield, Docket No. CV-01-0380279 (August 20, 2002) (33 Conn. L. Rptr. 88, 89) (separation agreements are "contracts . . . enforced by actions brought [on] the contracts themselves and the remedies are no other or different than the remedies provided by law for the breach of any other contract" (internal quotation marks omitted)). We therefore conclude that New York's plenary action rule is substantive and that the Appellate Court correctly determined that the plaintiff's motion to open and vacate the divorce judgment should have been denied.

The plaintiff contends that New York's plenary action rule is procedural under *Baxter* v. *Sturm, Ruger & Co.*, 230 Conn. 335, 644 A.2d 1297 (1994), and its progeny

because the right to challenge a contract on the basis of fraud existed at common law.[8] This argument misconstrues our reasoning in the *Baxter* line of cases. In *Baxter*, we addressed whether Connecticut law treats another state's statute of repose as substantive or procedural for choice of law purposes. Id., 336. We determined that a statute of repose, like a statute of limitations, "is considered one of the congeries of elements necessary to establish the right, and therefore characterized as substantive, only when it applies to a new right created by statute. . . . In such circumstances, [t]he time within which the suit must be brought operates as a limitation of the liability itself *as created* [by the statute], and not of the remedy alone." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 340. "If the right existed at common law, then the statute of repose is properly characterized as procedural because it functions only as a qualification on the remedy to enforce the preexisting right. If, however, the right is newly created by the statute, then the statute of repose is properly characterized as substantive because the period of repose is so integral a part of the cause of action as to warrant saying that it qualifie[s] the right." (Internal quotation marks omitted.) Id., 347; see *Reclaimant Corp.* v. *Deutsch*, supra, 332 Conn. 608 ("[u]nder Connecticut's choice of law rules, the dispositive inquiry is not whether the statute at issue properly is characterized as a statute of repose or a statute of limitations, but whether the nature of the underlying right that forms the basis of the lawsuit existed at common law" (internal quotation marks omitted)).

*Baxter* and its progeny are inapposite for the simple reason that New York's plenary action rule is not a statute of limitations or a statute of repose, and the distinction employed to distinguish between procedure and substance in that context has no application in the present case. In fact, the plenary action rule is not a creature of statute at all but, instead, an entrenched feature of New York's common law for the past 100 years. See *Yonkers Fur Dressing Co.* v. *Royal Ins. Co., Ltd.*, 247 N.Y. 435, 446, 160 N.E. 778 (1928) ("Defendants may be able in an independent suit to upset the settlement for reasons that would invalidate a contract, such as fraud or [overreaching]. But when a compromise results in the termination of an action and the execution of a new agreement giving effect to the settlement, it cannot be undone in the discretion of the court, *on motion in the action* and on conflicting affidavits raising anew the same dispute once settled . . . ." (Emphasis added.)). The plenary action rule draws "its justification from the practical notion that there must ultimately be an end to litigation" and requires "a plenary suit . . . [in which] the stipulation [of settlement] relates to an action [that] has previously terminated." *Teitelbaum Holdings, Ltd.* v. *Gold*, supra, 48 N.Y.2d 55. It is properly

characterized as a limitation on the right to challenge a separation agreement that is incorporated but not merged into a final judgment of divorce, rather than a mere limitation on the remedy, particularly because the parties explicitly incorporated the plenary action rule into the terms of their separation agreement and, by doing so, bargained for vested contractual rights that survive the final judgment of divorce.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The defendant died on December 18, 2020, and the coexecutors of his estate, Adam Cotumaccio and Pamela Chupka, were substituted as defendants. All references to the defendant in this opinion are to Back.

[2] General Statutes § 46b-71 provides: "(a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or vacated and that the enforcement of such judgment has not been stayed or suspended, and such certificate shall set forth the full name and last-known address of the other party to such judgment and the name and address of the court in the foreign state which rendered such judgment.

"(b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling."

[3] Under the final judgment of divorce, "[e]ach party has a right to seek a modification of the child support order upon a showing of: (i) a substantial change in circumstances; or (ii) that three years have passed since the order was entered, last modified or adjusted; or (iii) there has been a change in either party's gross income by [15] percent or more since the order was entered, last modified, or adjusted; however, if the parties have specifically opted out [of] subparagraph (ii) or (iii) of this paragraph in a validly executed agreement or stipulation, then that basis to seek modification does not apply." (Emphasis omitted.) See N.Y. Dom. Rel. Law § 236 (9) (b) (2) (i) (McKinney Cum. Supp. 2021) ("[t]he court may modify an order of child support, including an order incorporating without merging an agreement or stipulation of the parties, upon a showing of a substantial change in circumstances"); N.Y. Dom. Rel. Law § 236 (9) (b) (2) (ii) (A) and (B) (McKinney Cum. Supp. 2021) ("[i]n addition, unless the parties have specifically opted out of the following provisions in a validly executed agreement or stipulation entered into between the parties, the court may modify an order of child support where . . . three years have passed since the order was entered, last modified or adjusted; or . . . there has been a change in either party's gross income by fifteen percent or more since the order was entered, last modified or adjusted"). In its memorandum of decision on the plaintiff's motion for modification, the trial court found that the parties clearly had not opted out of subparagraphs (ii) or (iii) in the separation agreement.

[4] The defendant's attached 2010 income information included his W-2 form from Flavormatic, which listed his wages and earnings as $150,000.

[5] The plaintiff also claimed that the trial court "(1) improperly addressed the merits of the motion to open after determining that it lacked subject matter jurisdiction, (2) abused its discretion by failing to grant her motion for a continuance after her counsel disclosed that she intended to withdraw her appearance, and (3) erred in finding that the plaintiff had failed to demonstrate probable cause for postjudgment discovery under *Oneglia* . . . or comparable New York law." *Gershon* v. *Back*, supra, 201 Conn. App. 227 n.1. The Appellate Court did not address the plaintiff's additional claims in

light of its conclusion that "the plaintiff was required to raise her claims with respect to the parties' [separation agreement] by means of a plenary action." Id.

[6] The defendant also claims that this certified appeal is moot because the trial court's judgment may be affirmed on the alternative ground that the plaintiff ratified the separation agreement and, therefore, is estopped from challenging it on the basis of fraud. "Undoubtedly, if there exists an unchallenged, independent ground to support a decision, an appeal from that decision would be moot, as this court could not afford practical relief even if the appellant were to prevail on the issue raised on appeal." *Hartford* v. *CBV Parking Hartford, LLC*, 330 Conn. 200, 210, 192 A.3d 406 (2018). To render an appeal moot, however, the unchallenged ground must be independent of the issue on appeal, meaning that resolution of the issue on appeal would not and could not affect a separate unchallenged basis on which to affirm the underlying judgment. See id., 211–12 (appeal was not moot because trial court's factual finding regarding valuation of property was not independent of issue on appeal). In the present case, the trial court's resolution of the ratification issue was not independent of its resolution of the choice of law question because the trial court's application of New York law to the plaintiff's request for postjudgment discovery led it to conclude that the plaintiff had produced insufficient evidence of fraud and, therefore, was estopped from challenging the agreement. See, e.g., *Brennan* v. *Brennan*, 305 App. Div. 2d 524, 525, 759 N.Y.S.2d 744 (2003) (concluding that separation agreement had been ratified in absence of evidence of fraud); *Wilson* v. *Neppell*, 253 App. Div. 2d 493, 494, 677 N.Y.S.2d 144 (same), appeal denied, 92 N.Y.2d 816, 706 N.E.2d 747, 683 N.Y.S.2d 759 (1998); *Shalmoni* v. *Shalmoni*, 141 App. Div. 2d 628, 629, 529 N.Y.S.2d 538 (same), appeal dismissed, 73 N.Y.2d 851, 534 N.E.2d 333, 537 N.Y.S.2d 495 (1988); see also *Ronson* v. *Ronson*, 58 App. Div. 2d 987, 988, 396 N.Y.S.2d 939 (1977) ("In order to vitiate the support agreement, [a party] is required to show facts in evidentiary form. Conclusory assertions of fraud are insufficient . . . ." (Citations omitted.)). Because the choice of law and ratification issues are related, we conclude that the plaintiff's appeal is not moot.

[7] There are some exceptions to the plenary action rule, none of which is applicable to the present appeal. See, e.g., N.Y. Dom. Rel. Law § 236 (9) (b) (1) (McKinney Cum. Supp. 2021) ("[w]here, after the effective date of this part, an agreement remains in force, no modification of an order or judgment incorporating the terms of said agreement shall be made as to maintenance without a showing of extreme hardship on either party, in which event the judgment or order as modified shall supersede the terms of the prior agreement and judgment for such period of time and under such circumstances as the court determines"); N.Y. Gen. Oblig. Law § 5-311 (McKinney 2022) ("Except as provided in section two hundred thirty-six of the domestic relations law, a husband and wife cannot contract to alter or dissolve the marriage or to relieve either of his or her liability to support the other in such a manner that he or she will become incapable of self-support and therefore is likely to become a public charge. An agreement, heretofore or hereafter made between a husband and wife, shall not be considered a contract to alter or dissolve the marriage unless it contains an express provision requiring the dissolution of the marriage or provides for the procurement of grounds of divorce."); N.Y. Jud. Ct. Acts § 463 (McKinney 2008) ("[a] separation agreement does not preclude the filing of a petition and the making of an order under section four hundred forty-five of this article for support of a spouse who is likely to become in need of public assistance or care"); see also footnote 3 of this opinion.

[8] The plaintiff also contends that the plenary action rule is procedural because the failure to commence a plenary action is not always treated as a fatal defect in New York. In support of this contention, the plaintiff relies on cases from the Appellate Division of the New York Supreme Court that recognized the plenary action rule but, in the interest of judicial economy, nonetheless addressed the merits of a postjudgment motion challenging an unmerged separation agreement when the lower court had conducted "a full hearing tantamount to a plenary trial . . . ." *Gaines* v. *Gaines*, 188 App. Div. 2d 1048, 1048, 592 N.Y.S.2d 204 (1992); accord *Verna* v. *Verna*, 134 App. Div. 3d 1438, 1438, 23 N.Y.S.3d 500 (2015); *Dunham* v. *Dunham*, 214 App. Div. 2d 961, 961, 626 N.Y.S.2d 932 (1995); *Culp* v. *Culp*, 117 App. Div. 2d 700, 702, 498 N.Y.S.2d 846 (1986). The plaintiff argues that these cases stand for the proposition that the plenary action rule is procedural because, "[if] the rule [was] substantive, the court would have [had] no authority" to adjudicate the postjudgment motion. We reject the plaintiff's claim

because there is a fundamental distinction between the authority of a court to adjudicate a cause of action and the court's determination of the substantive law governing that cause of action. See *Lacks* v. *Lacks*, 41 N.Y.2d 71, 74, 77, 359 N.E.2d 384, 390 N.Y.S.2d 875 (1976). As the New York Court of Appeals explained in *Lacks*, the "[subject matter] jurisdiction-competence" of the courts should not be confused with the "substantive elements of a cause for relief" because "[t]o do so would be to undermine significantly the doctrine of res judicata, and to eliminate the certainty and finality in the law and in litigation which the doctrine is designed to protect." Id., 77. Thus, the nonjurisdictional nature of the plenary action rule does not resolve the issue of whether the rule is substantive or procedural for choice of law purposes.

———————————————————